UNITED STATES of America, Plaintiff–Appellant and Cross–Appellee,

v.

Allan Glenn GAITHER, Defendant–Appellee and Cross–Appellant.

Nos. 92–3222, 92–3246.

United States Court of Appeals, Tenth Circuit.

July 23, 1993.

---

Kristina L. Ament (Lee Thompson, U.S. Atty., and Kim M. Fowler, Asst. U.S. Atty., Wichita, KS, with her on the brief), Dept. of Justice, Washington, DC for plaintiff-appellant and cross-appellee.

Cyd Gilman, Asst. Federal Public Defender, Wichita, KS, for defendant-appellee and cross-appellant.

Before BALDOCK, McWILLIAMS, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Allan Gaither pled guilty to uttering counterfeit $20 bills in violation of 18 U.S.C.A. § 472 (West 1988). The district court's decision to depart from the Sentencing Guidelines based upon Mr. Gaither's post-offense drug rehabilitation is appealed by the Government and Mr. Gaither cross-appeals the increase in his base offense level for manufacturing the bills.

## I. Background.

Mr. Gaither was arrested at a Wichita nightclub for passing counterfeit $20 bills. After his arrest, Mr. Gaither admitted to police that he manufactured and passed $660 worth of counterfeit $20 bills in the Wichita area during the preceding week. Pursuant to Mr. Gaither's consent, police searched his house and discovered green colored paper, green dye, green marking pens, bowls used to mix the ink, and a clothes lines·used to dry the dyed bills.

Mr. Gaither pled guilty to uttering counterfeit Federal Reserve notes in violation of 18 U.S.C. § 472 (West 1988). In a written statement, Mr. Gaither explained that his drug and alcohol addiction motivated his counterfeiting. The presentence report confirms Mr. Gaither's history of alcohol and drug abuse. After his arrest, Mr. Gaither was admitted to an inpatient drug rehabilitation program and successfully completed the program prior to sentencing.

At sentencing, the district court applied U.S.S.G. § 2B5.1 of the Sentencing Guidelines (1991), resulting in a base offense level of nine, and then increased it to fifteen under U.S.S.G. § 2B5.1(b)(2) for manufacturing counterfeit bills. The court then deducted two points for Mr. Gaither's acceptance of responsibility under U.S.S.G. § 3E1.1 resulting in a sentencing range of fifteen to twenty-one months. The court departed from the Guidelines, however, and sentenced Mr. Gaither to twelve months in a halfway house, with the possibility of home detention after six months. The court's reason for departure was based primarily upon Mr. Gaither's drug rehabilitation.

The Government appeals, alleging the district court erred in departing from the Sentencing Guidelines on the basis of Mr. Gaither's post-arrest drug rehabilitation. Mr. Gaither cross-appeals, alleging the district court erred in enhancing his offense level from nine to fifteen pursuant to U.S.S.G. § 2B5.1(b)(2).

## II. Departure From The Guidelines.

### A. Drug rehabilitation.

The question of whether post-offense drug rehabilitation is proper grounds for a departure from the Guidelines was addressed by this panel in *United States v. Ziegler*, 1 F.3d 1044 (10th Cir.1993).[1] In *Ziegler*, we held that drug rehabilitation is not grounds for departure from the Guidelines. In reaching that result, we said a district court could consider a defendant's drug rehabilitation in deciding whether to grant a downward adjustment of two offense levels for acceptance of responsibility under U.S.S.G. § 3E1.1 if the "defendant's drug abuse problem is closely associated with his criminal conduct."[2] *Ziegler*, 1 F.3d at 1047. "Since post-arrest drug rehabilitation is a mitigating circumstance 'of a kind ... adequately consider[ed] by the Sentencing Commission in formulating the guidelines,' it is generally not a proper basis for departure." *Id.* at 1048, (quoting 18 U.S.C.A. § 3553(b) (West Supp.1993)). We further held that even if a defendant's drug rehabilitation could be characterized as exceptional, it would still not be a proper basis for departing downwards. *Id.* at 1049. We adopt the reasoning in *Ziegler* and find Mr. Gaither's drug rehabilitation efforts were not grounds for departure.

### B. Other grounds for departure.

Mr. Gaither alleges the district court did not base its decision to depart solely upon

drug rehabilitation, but also upon Mr. Gaither's exceptional acceptance of responsibility and lack of sophistication in counterfeiting. The Government asserts the contrary. The district court stated its rationale for departure as follows:

> [Y]ou have demonstrated to me about that which sentencing is about in part, and that is the rehabilitation, and it strikes me that since [your arrest] you have been a product of self-rehabilitation. The person I have just heard speak to me is certainly not the same person that was dealing with drugs or drug abuse or giving thoughts to manufacturing counterfeit bills to find the funds to support that abuse. I think I'm dealing with an entirely different person.
>
> ... [This] is a departure from the sentencing guidelines, but seems to me one that is deserving in this case, given your own acceptance of not only responsibilities for what you did but the acceptance of the situation that gave rise to your involvement and the total rehabilitation, as I see it. I see absolutely no useful purpose whatsoever for you now to be required to spend time incarcerated at some prison facility.

Our reading of the district court's rationale shows the district court based the departure primarily, if not solely, upon Mr. Gaither's rehabilitation. The district court saw Mr. Gaither's crime as "an end product of drug abuse" and apparently based the departure upon Mr. Gaither's rehabilitation from that dependency. The district court did make reference to Mr. Gaither's "acceptance of ... responsibilities", but it is unclear what weight that factor was given, if any.

Even if we were to assume the district court based its decision in part upon Mr. Gaither's acceptance of responsibility, we could not affirm the sentence for the following reasons. First, if a district court bases a

---

1. *Ziegler* was argued on the same day as the present case and raised essentially the same issue.

2. The district court found Mr. Gaither's offense to be motivated by, and a result of, his drug abuse problem. (R.Vol. I, doc. 35 at 20, 29.) Mr. Gaither's drug dependency is, therefore, "closely associated" with his crime. Our hold-

ing is in conflict with the Third Circuit which held a district court cannot consider drug rehabilitation as an indication of acceptance of responsibility unless the crime involved drugs, even if the crime was motivated by drug addiction. *United States v. Pharr*, 916 F.2d 129, 131–32 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991).

decision to depart from the Guidelines upon an impermissible factor, as it did in this case, remand is appropriate unless this court concludes "the district court would have imposed the same sentence absent the erroneous factor." *Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992). The record does not support such a conclusion.

■ Second, a district court may depart downwards from the guidelines if it finds "'there exists [a] ... mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0, p.s.; 18 U.S.C.A. § 3553(b) (West Supp.1993). Since a defendant's acceptance of responsibility is expressly accounted for under U.S.S.G. § 3E1.1,[3] it is not a basis for departure unless the district court finds the acceptance of responsibility to be so exceptional that it is "to a degree" not considered by U.S.S.G. § 3E1.1. *See United States v. Smith,* 930 F.2d 1450, 1454 (10th Cir.) *cert. denied,* — U.S. —, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991) ("Where ... departure is based on factors that are considered by the guidelines, the sentencing court cannot depart unless it finds that consideration to be inadequate in light of unusual circumstances."); *United States v. White,* 893 F.2d 276, 278 (10th Cir.1990) ("When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.") Such a finding by the district court, however, must be explained. *Smith,* 930 F.2d at 1454; *see White,* 893 F.2d at 278. In the present case, the district court elaborated upon why Mr. Gaither's rehabilitative efforts were justification for departure, but failed to give any reason why his acceptance of responsibility was so exceptional or the circumstances so unusual as to make § 3E1.1 inadequate.

**3.** Section 3E1.1(a) states: "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his

For the reasons stated above, we remand and instruct the district court to vacate the sentence imposed and resentence in accordance with this opinion.

### III. Application of § 2B5.1 of the Sentencing Guidelines.

■ We next address Mr. Gaither's claim that the district court erred in elevating his base offense level to fifteen under U.S.S.G. § 2B5.1(b)(2). Section 2B5.1(b)(2) states that "[i]f the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than 15, increase to 15." The district court enhanced Mr. Gaither's offense level to fifteen, finding he had manufactured counterfeit documents. On appeal, a district court's application of the sentencing guidelines to the facts is given due deference. *United States v. Short,* 947 F.2d 1445, 1456 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

■ Mr. Gaither bases his claim on Application Note 3 to § 2B5.1 which states: "[S]ubsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1, comment. (n. 3).

Mr. Gaither first argues that under Application Note 3, subsection (b)(2) should not apply since he merely photocopied the bills. Mr. Gaither claims the use of the conjunction "or," after "merely photocopy notes," supports his interpretation. The error in Mr. Gaither's argument is that he did not "merely photocopy" the $20 bills; instead, the record shows he used ink to dye the photocopied bills in order to make them more realistic. Moreover, Mr. Gaither's interpretation of Application Note 3 was expressly rejected by this Circuit in *United States v. Bruning,* 914 F.2d 212, 213 (10th Cir.) *cert. denied,* 498 U.S. 990, 111 S.Ct. 531, 112 L.Ed.2d 541

criminal conduct, reduce the offense level by 2 levels."

(1990), wherein we reasoned that "the defendant's proposed reading ... would protect even the most successful counterfeiters from the enhanced penalties of subsection (b)(2) based solely on the method of production, photocopying."

Mr. Gaither next argues his unsophisticated attempts at counterfeiting, as evidenced by the physical appearance of the counterfeit bills, should make Application Note 3 applicable.[4] The district court found that although the counterfeit $20 bills were unsophisticated, "they did pass muster, $660.00 worth." We agree with the district court.

We find it hard to reconcile the facts with Mr. Gaither's claim. Mr. Gaither was able to spend thirty-three $20 bills at various establishments in the Wichita area before being arrested. While the counterfeit bills were apparently not of exceptional quality, they were also not "so obviously counterfeit that they [were] unlikely to be accepted." U.S.S.G. § 2B5.1, comment. (n. 3).

We **REVERSE** and **REMAND** for resentencing.

---

4. Mr. Gaither specifically notes that the counterfeit bills "were missing borders, had the wrong color of ink, the ink was not as dark as that on a real bill, the printing details were not as detailed as on a real bill, and most of the counterfeit notes had the same serial number on them."