48 F.3d 1233
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Wayman COOK, Defendant-Appellant.
 No. 94-6163.
 United States Court of Appeals, Tenth Circuit.
 March 6, 1995.
 
 Before TACHA, BRORBY, and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant James W. Cook pled guilty to possessing counterfeit obligations and securities of the United States, contrary to 18U.S.C. 472. He was sentenced to thirteen months' imprisonment and ordered to pay $3,123.42 in restitution. He appeals his sentence, challenging the district court's application of United States Sentencing Guideline (U.S.S.G.) 2B5.1(b)(2). We affirm.
 
 
 3
 Defendant owned a presorted mail business. A confidential informant reported that defendant was producing counterfeit postage meter strips by duplicating legitimate strips with a copy machine using red ink. During a search of defendant's business $3,123.42 worth of counterfeit postage meter strips were found. A grand jury subsequently returned a four-count indictment. Defendant pled guilty to count three, and the remaining counts were dismissed.
 
 
 4
 In sentencing defendant to thirteen months' imprisonment, the district court applied section 2B5.1(b)(2) to set the base offense level at fifteen.[2] Two points were subtracted for acceptance of responsibility, resulting in a total offense level of thirteen. Defendant's motion to stay the sentence pending appeal was denied, and he began serving it on May 31, 1994.
 
 
 5
 We review the district court's findings of fact under the clearly erroneous standard. 18 U.S.C. 3742(e). We give due deference to the district court's application of the guidelines to the facts. Id.; United States v. Gaither, 1 F.3d 1040, 1043 (10th Cir.1993).
 
 
 6
 Defendant first contends that counterfeiting postage meter strips was not an act to which section 2B5.1(b)(2) applies. He points out that application note 1 to section 2B5.1 lists counterfeiting postage stamps as an offense to which the section applies, but does not mention postage meter strips.[3] However, the offense to which defendant pled guilty was counterfeiting any "obligation or other security of the United States." 472. Section 2B5.1(b)(2) applies to the manufacture or production of "any counterfeit obligation or security of the United States." Section 2B5.1(b)(2) plainly applies to defendant's offense.
 
 
 7
 Defendant's next contention is that his use of a photocopier to create the postage meter strips precludes application of section 2B5.1(b)(2). He relies on application note 3, which provides that section 2B5.1(b)(2) "does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny."
 
 
 8
 In United States v. Bruning, 914 F.2d 212 (10th Cir.), cert. denied, 498 U.S. 990 (1990), the defendant used a color office copier and green ink to manufacture counterfeit United States reserve notes. Approximately $11,000 worth of the notes were passed. He argued that application note 3 should be read as excluding from section 2B5.1(b)(2) all persons who produce counterfeit notes by photocopying. We rejected his reading and instead interpreted application note 3 to exclude only those defendants "who produce notes, by photocopying or other means, that 'are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny.' " Id. at 213 (quoting application note 3); accord Gaither, 1 F.3d at 1043-44. We affirmed the district court's application of section 2B5.1(b)(2) based on its finding that "the notes were not so obviously counterfeit that they would be unlikely to be accepted even if subjected to only minimal scrutiny." Bruning, 914 F.2d at 212.
 
 
 9
 The district court in this case found the strips were not obviously counterfeit but had been routinely accepted as genuine by the United States Postal Service. Defendant challenges this finding because Postal Inspector Steve Pereira stated in his affidavit that some of the counterfeit strips were darker than legitimate strips. However, the district court stated it relied on Pereira's testimony that the counterfeit strips were of exceptional quality and he could not determine which were counterfeit simply by looking at them. Rather, it was necessary to send them to a forensic laboratory to analyze whether they were genuine. As the district court's finding has support in the record, and we are not left with a definite and firm conviction that a mistake has been made, see United States v. Alberty, 40 F.3d 1132, 1133 n. 3 (10th Cir.1994), we uphold the finding.[4] We conclude that section 2B5.1(b)(2) was appropriately applied notwithstanding defendant's use of a photocopier.
 
 
 10
 Defendant also argues that under Bruning, 914 F.2d at 213, the government was required to show sophistication and planning in the counterfeiting scheme. He compares his "unsophisticated" counterfeiting operation to that in Bruning, described above, and Gaither, 1 F.3d at 1043, where the defendant used ink to dye the photocopied bills.
 
 
 11
 In Gaither, the district court actually found that the counterfeit bills were unsophisticated. Id. at 1044. Nevertheless, we held it was appropriate to apply section 2B5.1(b)(2) because the bills were not so obviously counterfeit that they were unlikely to be accepted and, in fact, had been accepted. Id. Here, the district court found that the counterfeit postage meter strips had been routinely accepted as genuine. The test for application of section 2B5.1(b)(2) has been met, and we therefore reject this argument.
 
 
 12
 Defendant also contends section 2B5.1(b)(2) does not apply to counterfeit items like postage meter strips that do not have an extended life. Again, he compares his actions to those of the defendants in Bruning and Gaither who counterfeited bills that had an extended life. An obvious problem with this position is that application note 1 specifically states that section 2B5.1 applies to postage stamps which, like postage meter strips, have a limited life. We therefore reject the contention.
 
 
 13
 Defendant argues he had a defense: that the normal percentage of waste postage is 3%, and that he never returned any postage for the 90% refund to which he was entitled. This defense, he claims, establishes he lacked intent to defraud the government, and distinguishes his case from Bruning and Gaither. Defendant's guilty plea was an admission of all elements of the charge, McCarthy v. United States, 394 U.S. 459, 466 (1969), one of which is intent to defraud, 472. Further, the fact that $3,123.42 worth of counterfeit postage meter strips were found on defendant's business premises during the search, but only $1,500 of postage had been purchased for that day, tends to negate defendant's claim that he was only trying to minimize his loss on wasted postage.[5] We therefore reject this argument.
 
 
 14
 Finally, defendant argues the district court erred in failing to find mitigating circumstances justifying a downward departure. Defendant has shown no ground warranting review of the district court's refusal to downwardly depart. Cf. United States v. Rodriguez, 30 F.3d 1318, 1319 (10th Cir.1994).
 
 
 15
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 This section applies if the defendant "manufactured or produced any counterfeit obligation or security of the United States."
 
 
 [3]
 Contrary to defendant's assertion, section 2B5.1(b)(2) says nothing about postage stamps
 
 
 [4]
 The transcript of the April 1, 1994, evidentiary hearing was not included in the record originally provided to this court, although defendant ordered it. We requested that the transcript be prepared and filed, and we direct that it supplement the record. Fed.R.App.P. 10(e)
 
 
 [5]
 If 3% of postage purchased is wasted, defendant would have had only $45 worth (3% of $1,500) of counterfeit postage to offset his loss