**UNITED STATES of America,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**Irma PEÑA, Defendant–Appellant,**
**Cross–Appellee.**

**Nos. 89–2294, 89–2314.**

United States Court of Appeals,
Tenth Circuit.

April 18, 1991.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, Acting U.S. Atty., with him on the briefs), Albuquerque, N.M., for plaintiff-appellee, cross-appellant.

Ralph C. Binford, Deming, N.M., for defendant-appellant, cross-appellee.

Before HOLLOWAY, Chief Judge, EBEL, Circuit Judge, and NOTTINGHAM *, District Judge.

NOTTINGHAM, District Judge.

A jury found Defendant Irma Peña guilty of possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. 841(b)(1)(D) (1988). Since the offense occurred on April 30, 1989, the district court applied the federal sentencing guidelines in effect on that date and determined that the applicable guideline range specified a prison term of 27 to 33 months. *See* U.S.S.G. § 2D1.1(a)(3) (1988), *found at* United States Sentencing Commission, *Guidelines Manual* (1988 ed.). The district court departed downward from this range, however, because of Peña's "unique family responsibility" and other circumstances. Peña was placed on probation for a term of five years, a special condition of probation being that she serve six months in a community treatment center.

Peña appeals the district court's judgment, arguing that the district court erred by: (1) denying a motion for a mistrial based upon improper remarks by the prosecutor during closing argument; (2) failing to give Peña's requested instruction submitting to the jury the issue of whether she was a "minor" or "minimal" participant in the offense; (3) failing to give Peña's requested "identity" instruction; and (4) failing to give Peña's requested instruction regarding the lesser-included-offense of simple possession. The government cross-appeals the district court's sentence, arguing that the district court erred when it departed downward from the applicable guideline range. The government also claims that, even if a downward departure was permissible, the degree of departure was unreasonable. We reject all of the parties' contentions and affirm the district court's judgment and sentence.

* Honorable Edward W. Nottingham, United States District Judge for the District of Colora-

## FACTS

On April 30, 1989, United States Border Patrol Agents Adam Monsibaiz and Robert Johnson stopped a car, driven by Peña, at a border checkpoint near Truth or Consequences, New Mexico. Monsibaiz approached the occupants to conduct a routine citizenship inquiry. Peña appeared nervous, she stuttered, and she clenched the steering wheel. Monsibaiz smelled air freshener coming from the car. Consequently, Monsibaiz and Johnson directed the vehicle to a secondary inspection site.

Monsibaiz and Johnson asked the occupants to step out of the vehicle. They also requested permission to search the vehicle, and Peña consented. Inside the car, Monsibaiz smelled marijuana. Under the rear passenger seat, Monsibaiz discovered 66 pounds of marijuana. United States Customs Officer James Hughes subsequently arrived and took possession of the car and marijuana.

Peña did not own the car. Agent Hughes discovered a title in the name of "Marcos Perez" in the car, but the agents were never able to locate Perez. At trial, Peña and her sister, a passenger in the car, testified that they were driving to Belen, New Mexico to visit another sister, who was ill. Since Peña's car was not working well, they testified, a man named Frederico Gonzales loaned Peña the car. This car, driven by Peña, was the car that contained the marijuana. The crux of Peña's defense was that she and the other occupants did not know anything about the marijuana hidden under the back seat of the borrowed car.

## ANALYSIS

### I. IMPROPER CLOSING ARGUMENT BY THE GOVERNMENT

■ Peña argues that certain remarks of the prosecutor during trial and closing argument were so prejudicial as to deny her a fair trial. During cross-examination, the following exchange occurred between Peña

do, sitting by designation.

and the government prosecutor, Mr. Williams:

Mr. Williams: Did you call for Frederico [the person who allegedly loaned Peña the car]?

Ms. Peña: I kept looking, twice the same day, Sunday night. I went twice to see if he was there. Then I finally found him.

Mr. Williams: And you told him—

Ms. Peña: I told him I was real angry with him. He said, "I didn't know nothing."

. . . .

Mr. Williams: Did you go to the police and say, "Look, I know a man that broke the laws of the United States. They got a car full of dope, I know where he lives. I can take you right to him, he caused my sister and me to be arrested?"

Ms. Peña: No, I didn't.

Mr. Williams: Didn't you think that was something you ought to tell the police about?

Ms. Peña: Yes.

Mr. Williams: Why didn't you tell the police?

Ms. Peña: I was confused. I came over here to see Mr. Rosas and I went to talk to my lawyer and then they sent me to El Paso to Federal Court to talk every week, so I figured that was enough.

R. Vol. III at 104–105.

During his closing, the prosecutor then commented on the testimony as follows:

Then, according to the testimony, after she is released she goes and warns the man. She does not tell the police. *Failure to report a felony is a felony in itself.*

R. Vol. III at 131–132 (emphasis supplied). Peña objected and, at a sidebar conference, moved for a mistrial. The district judge responded:

Well, I think you can argue for the point of illustrating his theory that her story may have been fabricated. I think that's the point of what he is trying to do.

*Id.*

Peña alleges that the prosecutor's comments were improper and that a new trial is required, because she was accused of a crime—misprision of a felony—for which she was not indicted. The government strenuously insists that the remarks amounted to nothing more than proper comment on Peña's credibility. We conclude that a portion of the prosecutor's remarks were improper but that the impropriety does not require reversal or a new trial.

■ As we have recognized, a prosecutor's summation may appropriately suggest to the jury what inferences it ought to draw from the evidence in the case. *E.g.,* *United States v. Manriquez Arbizo,* 833 F.2d 244, 247 (10th Cir.1987); *United States v. Nolan,* 551 F.2d 266, 274 (10th Cir.1977), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). *See also United States v. Perez,* 493 F.2d 1339, 1343 (10th Cir.1974). Peña acknowledged that she had attempted to contact the person who loaned her the car and that she had not gone to the police. The prosecutor was thus entitled to question her story by suggesting that a reasonable person who had been innocently driving a car containing marijuana placed there by another would have helped the police locate the person who put her in this situation, instead of trying to contact the person herself.

The prosecutor, however, did not stop there; instead he gratuitously suggested that Peña's failure to contact the police was "a felony in itself." Placing aside the issue of whether this expansive interpretation of the federal misprision statute is correct, the suggestion was improper for at least three related reasons. First, it was calculated to mislead the jury by insinuating that the jury's evaluation of Peña's story could properly include consideration of the fact that the story itself revealed another crime. *See United States v. Manriquez Arbizo,* 833 F.2d at 247 (prosecutor cannot place improper inference into the minds of jurors). Second, it injected into the case an extraneous issue concerning criminal conduct of which Peña was not accused and which was not relevant for any purpose. *Cf.* Fed.R.Evid. 404(b). Third, it was calculated to inflame the jury's passions by implying that (in the

prosecutor's opinion, at least) Peña had committed yet another crime. *See* 1 *ABA Standards for Criminal Justice* § 3–5.8(b), (c) (2d ed. Supp.1986) (prosecutor should not express his opinion concerning guilt of defendant or use arguments calculated to inflame jury's passions).

 Having determined that the prosecutor's remarks were improper, we must next consider whether the impropriety requires a new trial. To determine whether a defendant has been denied a fair trial, "it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations...." *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Thus, we will not overturn a conviction on account of improper argument by the prosecutor "unless the prosecutor's misconduct 'was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented.' " *United States v. Espinosa*, 771 F.2d 1382, 1401 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985) (quoting *United States v. Dickey*, 736 F.2d 571, 596 [10th Cir.1984], *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 [1985] ). *See also United States v. Manriquez Arbizo*, 833 F.2d at 248. Consistent with *Hasting*, the question of whether the improper comment has deprived defendant of a fair trial is answered by viewing the improper remark against the backdrop of the entire record before the jury. *United States v. Espinosa*, 771 F.2d at 1401.

Several circumstances support our conclusion that the prosecutor's improper comment does not require a new trial. The comment was singular and isolated. *See United States v. Manriquez Arbizo*, 833 F.2d at 248. At the sidebar conference during which defendant moved for a mistrial, the district judge warned the prosecutor to move on to something else in his argument, and the prosecutor complied. R.Vol. III at 133. While the judge did not tell the jury that the comment was improper or instruct that it be disregarded (as he might properly have done), he did instruct the jury—twice—that the statements and arguments of counsel were not evidence. R.Vol. III at 9, 121. The jury was also instructed that defendant was not on trial for any uncharged conduct and that the defendant was not to be found guilty unless her guilt was established beyond a reasonable doubt. R.Vol. III at 117–18, 122. Finally, based on our review of the trial record, we find ample evidence to support the jury's verdict. These circumstances lead us to conclude that the isolated improper comment was not so egregious as to influence the jury to convict Peña on evidence not found in the record. *See United States v. Haskins*, 737 F.2d 844, 850 (10th Cir.1984). Accordingly, we will not reverse on this ground.

## II. JURY INSTRUCTIONS

### A. *Instruction Permitting the Jury to Decide Whether Peña Was a Minimal or Minor Participant.*

 Peña next argues that the district court erred in failing to give two requested jury instructions and a special interrogatory which would have submitted to the jury the question of whether her role in the offense was "minor" or "minimal." The proposed instructions defined the terms "minimal participant" and "minor participant" in language taken from the federal sentencing guidelines, U.S.S.G. § 3B1.2, comment (n.1–3) (1988), and the special interrogatory permitted the jury to record its finding on the issue. Although decisions regarding jury instructions are ordinarily within the discretion of the district judge, *United States v. Troutman*, 814 F.2d 1428, 1451 (10th Cir.1987), the real question raised by Peña's proposed instructions— whether defendant's role in the offense should have been determined by the jury or the sentencing court—is a wholly legal question; accordingly, we consider this issue *de novo*. *Cf. United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990) (legal conclusions with respect to the guidelines are subject to *de novo* review).

 Unless a specific statute permits the jury to play a part in meting out punishment, the jury's sole role in a criminal

case is to determine whether a defendant is guilty of the crime charged. *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971) (not error to prohibit defense counsel from telling jury of statutory minimum sentence, because jury is to determine only guilt or innocence). The jury is thus concerned with factual issues relating wholly or partly to guilt or innocence. Factual issues relating only to the degree of punishment are to be resolved by the sentencing court. *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir.1966).

We find nothing in the sentencing guidelines to suggest that the guidelines were intended to alter the usual rule reserving punishment issues for the sentencing court. Indeed, the procedures and standards which courts are developing to decide factual issues relating to punishment under the guidelines would likely mislead and confuse a jury if juries were to decide such issues. We have held, for example, that a defendant bears the burden of proof on issues which would entitle him to a reduction in offense level or sentence. *E.g., United States v. Rogers*, 921 F.2d 975, 982 (10th Cir.1990). This rule is inconsistent with the general rule at trial that a defendant bears no burden at all, and the inconsistency would likely produce some degree of jury confusion. The same can be said of the rule that factual issues relevant to sentencing are to be decided by a preponderance of the evidence, not by proof beyond a reasonable doubt, *see United States v. Easterling*, 921 F.2d 1073, 1077 (10th Cir. 1990), or the general provision that the usual rules of evidence do not apply to factual issues relevant to sentencing. Fed. R.Evid. 1101(d)(3). We therefore conclude that the sentencing guidelines, as well as the cases establishing procedures and standards for applying them, do not envision that a jury will decide factual issues which relate solely to sentencing. The district court was correct in refusing to permit the jury to decide whether Peña was a "minor" or "minimal" participant in the crime.

B. *The Instruction Concerning Identity.*

Peña argues that the district court improperly refused to give her proposed instruction regarding the identity of the defendant as the perpetrator of the offense. The instruction in question read as follows:

[T]he Government must prove not only the essential elements of the offense or offenses charged, but must also prove, of course, the identity of the Defendant as the perpetrator of the alleged offense or offenses. If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the Defendant as the perpetrator of the offense charged, you must find the Defendant not guilty.

R.Vol. I at 3. The district judge refused the instruction, stating:

There is no question about the identity of the defendant as the person who stopped at the checkpoint where the contraband was discovered. The issue in this case, as I understand it, is whether the defendant was aware that the contraband was in the vehicle over which she had control. I really don't think this instruction is appropriate when that is the real issue in this case.

R.Vol. III at 112.

We have no quarrel with the abstract principle of law, implicit in Peña's tendered instruction, requiring the government to prove that the defendant was the person who committed the offense charged. We also recognize, however, that the refusal of a particular jury instruction, even if it is an accurate statement of the law, is within the discretion of the district judge. *United States v. Troutman*, 814 F.2d 1428, 1451 (10th Cir.1987). In deciding whether the judge properly exercised his discretion, we must examine the other instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. *United States v. Burns*, 624 F.2d 95, 105 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). "An instruction reflecting an abstract statement of the law unrelated to the facts of the case may be refused." *Troutman*, 814 F.2d at 1451.

Here, the identity of the person who committed the acts underlying the offense was not really an issue, since Peña acknowledged that she was driving the car. This is not a case where it was arguably necessary for the instructions to underscore the identity issue or to comment on the vicissitudes of eyewitness testimony. *Cf. United States v. Thoma,* 713 F.2d 604, 608 (10th Cir.1983), *cert. denied,* 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 183 (1984) (discussing standards for review of refusal to give instruction concerning eyewitness testimony). The real issue presented by Peña's theory of defense was whether she acted with the required knowledge and specific intent. The district judge gave standard instructions on each of these questions. R.Vol. III at 119, 124. Because these instructions adequately covered the issues, it was not error for the district judge to refuse Peña's tendered instruction on identity. *See United States v. Burns,* 624 F.2d at 105.

## C. *Lesser–Included–Offense Instruction.*

Peña contends that the district court should have given an instruction submitting to the jury the question whether she was guilty of simple possession of marijuana (without intent to distribute), in violation of 21 U.S.C. § 844 (1988). She was entitled to such an instruction if all of the following four conditions were met:

(1) a proper request; (2) the lesser-included-offense must consist of some, but not all, of the elements of the offense charged; (3) the elements differentiating the two offenses must be a matter in dispute; and (4) a jury must be able to rationally convict the defendant of the lesser offense and acquit of the greater offense.

*United States v. Joe,* 831 F.2d 218, 219 (10th Cir.1987), *cert. denied,* 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988). The government concedes that defendant made a proper request and that the crime of simple possession consists of some, but not all, elements of the offense of possession with intent to distribute. The issue is whether the defendant satisfied the third and fourth conditions articulated in *Joe.*

We conclude that defendant was not entitled to a lesser-included-offense instruction because she satisfied neither the third nor the fourth of the *Joe* conditions. With respect to the third condition, Peña's sole claim (and the evidence supporting it) was that she did not knowingly possess marijuana for any purpose; she was merely the innocent driver of the car. There was no evidentiary dispute concerning the element differentiating the two offenses—intent to distribute. There was no evidence, for example, that Peña was a heavy user of marijuana or that she possessed paraphernalia for using marijuana, from which the jury might have inferred that she possessed the substance for her own consumption. To the contrary, the undisputed evidence concerning the quantity of marijuana (66 pounds), its value ($53,000), and the fact that it was being transported in bulk compel the inference in these circumstances that it was possessed with intent to distribute.

It follows that Peña has also failed to satisfy the fourth *Joe* condition: in these circumstances, no jury could rationally convict her of simple possession and yet acquit her of possession with intent to distribute. Assuming that the jury rejected her "innocent driver" defense (as it clearly did), it would then need to determine whether Peña possessed the marijuana with any intent other than the intent to assist in distributing it. As noted, there is simply no evidence in this record to support a rational finding that Peña possessed the marijuana for her own use. The district court did not abuse its discretion in refusing a lesser-included-offense instruction.

Peña resists this conclusion by analogizing the facts in this case to those in *United States v. Burns,* 624 F.2d 95, 104–05 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980), in which we found error in the district court's refusal to give an instruction concerning simple possession. While the comparison has some merit, we believe the factual distinctions between the two cases justify a different

result here. In *Burns,* two of the defendants had purchased cocaine from the third defendant. There was no indication of the quantity of cocaine involved, but the purchase price was approximately $13,000. Although the cocaine was 100 percent pure (a fact tending to support the inference that defendants intended to dilute and distribute it), there was also evidence from which the jury could have concluded that the purchasing defendants had actually used a portion of the substance. In these circumstances, we concluded that the purchasing defendants, but not the selling defendant, were entitled to an instruction on simple possession. The evidence concerning personal use by the purchasing defendants and the ambiguity concerning the quantity possessed created a basis for a rational finding that the purchasing defendants possessed the cocaine for their own use. Here, in contrast, the undisputed evidence does not permit such a finding.

## III. THE DOWNWARD DEPARTURE AT SENTENCING

### A. *The Decision to Depart.*

█ The district court departed from the applicable guideline range, which required imprisonment for 27 to 33 months, and sentenced Peña to serve a five-year term on probation. As a special condition of probation, the court required Peña to serve six months in a community treatment center. In effect, the court departed from an offense level of 18 to an offense level of 10. *See* U.S.S.G. ch. V, pt. A (1988) (sentencing table); U.S.S.G. §§ 5B1.1(a)(2), 5C2.1(c), 5C2.1(e) (1988). The government challenges both the decision to depart and the degree of departure.

█ This court reviews a district court's upward or downward departure from the guidelines by means of a three-step analysis. *First,* we determine whether the circumstances cited by the district court justify a departure from the guidelines. *United States v. White,* 893 F.2d 276, 277–278 (10th Cir.1990) (review for upward departures); *United States v. Maldonado–Campos,* 920 F.2d 714, 719–20 (10th Cir.1990) (downward departures by

district court are reviewed under the *White* analysis). Our review of this issue is plenary. *United States v. White,* 893 F.2d at 278. *Second,* we review any factual determinations made by the district court to determine whether they are "clearly erroneous." *Id. Third,* if a departure is justified, we review the degree of departure to determine if it is reasonable. *Id.* Here, the government does not challenge the district judge's factual findings; hence, we consider only the first and third parts of the *White* analysis.

As his justification for the downward departure, the district judge stated:

I find that the Defendant's unique family responsibility warrants a departure to the established guideline range of 27 to 33 months, for special circumstances. Mainly, that the Defendant is a single parent of a two-month old child and is the sole support for herself and her infant child. In addition, she has been steadily employed for a long time and is providing for the financial support of her 16–year old daughter who, herself, is a single parent of a two-month old child. Therefore, should the Defendant be incarcerated for an extended period of time, two infants would be placed at a potential risk.

Defendant has no prior record of drug abuse, nor other felony criminal convictions and has held long-term employment. She poses no threat to the public and would be justly punished, sufficiently deterred and adequately rehabilitated by a sentence of probation with community confinement as a special condition. Accordingly, a downward departure to a term of probation is appropriate as the Defendant does not now need to be incarcerated to protect the public from other crimes.

R.Vol. II at 10–11.

We conclude that the circumstances cited by the district court justify a departure from the guidelines. A sentencing court, of course, may depart downward from the guidelines only if it finds that there exist mitigating circumstances of a kind, *or to a degree,* not adequately taken into consider-

ation by the sentencing commission in formulating the guidelines. 18 U.S.C. § 3553(b) (1988); U.S.S.G. § 5K2.0 p.s. (1988). In commenting on the availability of probation under the guidelines, the commission describes the offense levels for which probation is expressly permitted and then explicitly states that it "has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S. S.G. ch. I, pt. A § 4(d) p.s., at p. 1.9 (1988). Implicit in the district judge's findings is the conclusion that Peña's behavior here was an aberration from her usual conduct, which reflected long-term employment, economic support for her family, no abuse of controlled substances, and no prior involvement in the distribution of such substances. The aberrational character of her conduct, combined with her responsibility to support two infants, justified a departure. *See United States v. Dickey*, 924 F.2d 836 (9th Cir.1991); *United States v. Russell*, 870 F.2d 18, 20 (1st Cir.1989).

The government questions the district judge's decision to depart on two grounds. First, it argues that the district judge impermissibly used Peña's sex as a basis for departure. The guidelines ·unequivocally state that race, sex, national origin, creed, religion and socio-economic status are factors that "are not relevant in the determination of a sentence." U.S.S.G. § 5H1.10 p.s. (1988). The government's argument, however, reflects a twisted view of the district judge's reasoning. We find nothing in the record or in the judge's reasoning to suggest that he departed because Peña is a woman or that he would have refused to depart in these circumstances had she been a man. The departure did not violate section 5H1.10.

Second, the government argues that the district judge impermissibly departed on the basis of Peña's family ties and responsibilities. Section 5H1.6 of the guidelines states that "[f]amily ties and responsibilities and communities ties are not *ordinarily* relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.6 (1988) (emphasis supplied). The underscored language implies

that there may be extraordinary circumstances where family ties and responsibilities may be relevant to the sentencing decision. Here, these responsibilities, combined with the aberrational nature of Peña's conduct, justified the departure to a term of probation. Peña's family responsibilities were also properly considered "in the determination of the length and conditions of supervision." *Id.*

### B. *The Degree of Departure.*

Addressing the third part of the *White* analysis, the government urges that the degree of departure was unreasonable. While the question of what is "unreasonable" is the most elusive part of the *White* analysis, the statute governing appellate review of sentences tells us generally how we should approach this task. When we review a sentence outside the applicable guideline range, we must determine whether it

is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c).

18 U.S.C. § 3742(e)(3) (1988).

Consistent with the statute, our review commences with an examination of the district court's reasons, which must include (1) reasons for imposition of the particular sentence and (2) the specific reason for imposition of a sentence outside the guideline range. 18 U.S.C. § 3553(c) (1988); *United States v. Gardner*, 905 F.2d 1432, 1436–39 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). Here, the district judge stated why he was departing and why he chose a sentence of probation with a special condition of community confinement. His statement was adequate to comply with the statute and to permit "the kind of meaningful review intended by § 3742 of the Sentencing Reform Act." *United States v. Smith*, 888 F.2d 720, 724 (10th Cir.1989), *cert. denied*,

—— U.S. ——, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990).

We next examine the district court's reasons in light of the factors which the Sentencing Reform Act deems relevant in imposing a sentence. Those factors are found mainly in 18 U.S.C. § 3553(a) (1988) and include: the nature and circumstances of the offense; the seriousness of the offense; the history and characteristics of the defendant; the need for just punishment; deterrence; protection of the public from further crimes of the defendant; any pertinent policy statements of the sentencing commission; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. In deciding whether the district court's reasoning comports with these statutory considerations, it is necessary to "leave considerable discretion in the hands of the sentencing judge." *United States v. White*, 893 F.2d at 278. The issue is not whether we would have departed to the exact extent that the sentencing judge did, but whether the judge's statement reflects a reasoned, persuasive review of the statutory considerations.

The district judge's findings here do reflect a reasoned review of the statutory considerations. On the one hand, he weighed the defendant's long employment history, the aberrational nature of her conduct, and the fact that two infants would be deprived of support if she were incarcerated. These circumstances supported a departure to probation, so that defendant could continue to work and support her family. He also weighed the seriousness of the offense, the need to protect the public, the need for just punishment, and the goal of deterrence. The result of this process was the requirement that Peña spend some time in a community treatment center (allowing some confinement while permitting her to keep her job) and a lengthy probationary term of five years. We are not convinced, therefore, that the degree of departure was unreasonable.

The district court's judgment and sentence are AFFIRMED.