UNITED STATES of America, Plaintiff–Appellee/Cross–Appellant,

v.

Jesse WARNER, Defendant–Appellant/Cross–Appellee.

Nos. 92–4175, 92–4190.

United States Court of Appeals, Tenth Circuit.

Sept. 29, 1993.

Mark K. Vincent, Asst. U.S. Atty. (David J. Jordan, U.S. Atty., with him on the brief), Salt Lake City, UT, for plaintiff-appellee/cross-appellant.

Joseph C. Fratto, Jr., Salt Lake City, UT, for defendant-appellant/cross appellee.

Before MOORE, ANDERSON, and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

In this cross-appeal, Jesse Warner contends his conviction of the crime of illegally possessing a machine gun cannot stand because Utah law authorized that possession. We hold federal law prohibits private possession of machine guns and Mr. Warner's interpretation of statutory law to the contrary is meritless. In the calculation of Mr. Warner's sentence, the district court granted a two-point downward departure based on a circumstance the district court concluded the Sentencing Commission did not consider. The government appeals that sentence. Because the circumstance was adequately considered, we hold the departure was unfounded and remand for resentencing.

The events resulting in Mr. Warner's conviction began when two police officers were hailed to a roadside in North Salt Lake City where they found several individuals, two of whom were engaged in what the government describes as "a physical altercation." At issue between the combatants, it seems, was which one had been driving recklessly. As the events unfolded, the officers learned Mr. Warner had menaced his antagonist, threatening he would get a gun. They were thus prompted to escort Mr. Warner to his car ostensibly to retrieve his identification.

As Mr. Warner opened the car door, the officers spotted the grip of a gun protruding from a black case beneath the passenger

seat. The officers recovered a fully automatic 9mm Intratec, Model Tech–9, machine gun with an attached device purported to be a silencer. Three loaded magazines were also found in the case.

After first denying ownership, Mr. Warner later admitted the gun was his. He claimed, however, he was a gun enthusiast and machinist, and he had modified the weapon to make it fully automatic only as a "challenge" and not for any criminal purpose.

Mr. Warner ultimately was charged with possessing an unregistered firearm, 26 U.S.C. §§ 5861(d), 5871; possessing a machine gun, 18 U.S.C. §§ 922(o), 924(a)(2); and failing to register a silencer and possessing a silencer not identified by a serial number, 26 U.S.C. § 5842. The count charging possession of an unregistered machine gun was dismissed prior to trial because of this court's holding in *United States v. Dalton,* 960 F.2d 121 (10th Cir.1992).

At trial, the jury returned a guilty verdict on the machine gun count but acquitted defendant on the remaining silencer counts. Mr. Warner was sentenced to 6 months in a community treatment center, 6 months' home confinement, 100 hours of community service, and 3 years' supervised release.

### Mr. Warner's Appeal

■ At issue is the correct interpretation of a federal statute. That is a matter we review *de novo. United States v. Walker,* 947 F.2d 1439, 1444 (10th Cir.1991).

■ Mr. Warner maintains the statutory ban on possession of a machine gun contained in 18 U.S.C. § 922(o)(1) is modified by § 922(o)(2)(A) which expressly excludes possession made lawful by state law. It states:

(o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to ... possess a machinegun.

(2) This subsection does not apply with respect to—

(A) ... possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof....

Mr. Warner contends this section applies to him because Utah law authorizes his possession of the machine gun, citing Utah Code Ann. § 76–10–510. That statute states:

Nothing in this part shall be construed to prohibit a citizen of the United States ... from owning, *possessing,* or keeping within his place of residence or place of business or any *vehicle under his control* any pistol, revolver, or *other firearm* or dangerous weapon capable of being concealed upon the person....

(Emphasis added). Mr. Warner suggests neither federal nor state law defines the word "authority" as used in § 922(o)(2)(A), but he reasons the word must be equated with "permission." From that premise, he contends the Utah statute grants permission to possess firearms in vehicles; therefore, because a machine gun is a "firearm" under Utah law, he has state-created authority to carry the weapon. Magically, he is thus exempt from the federal prohibition and not subject to prosecution in this case.

Defendant contends the state statute unambiguously confers the authority to carry firearms "to a particular class of persons" restricted only by place of residence, business, or vehicle. His contention of class-based, state-created permission, however, seemingly includes all citizens of the United States within its sweep, hence effectively relegating applicability of the federal prohibition against machine gun possession to non-citizens. For support of this basic contention, Mr. Warner relies on *Farmer v. Higgins,* 907 F.2d 1041 (11th Cir.1990), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 753, 112 L.Ed.2d 773 (1991). *Farmer* does not provide that support, however.

In *Farmer,* a person sought to compel the Bureau of Alcohol, Tobacco and Firearms to register his machine gun. The district court found § 922(o) did not prohibit private possession of machine guns as long as the owner complied with the National Firearms Act's registration requirements. The Eleventh Circuit reversed, holding the district court's interpretation of the phrase "under the authority" contained in the federal exemption "would render section 922(o)(1)'s 'machine

gun prohibition' a nullity; the Bureau would be required to process applications without regard to section 922(*o*)(1), and reach the same result as if the prohibition had never been enacted." *Id.* 907 F.2d at 1044. While private possession of machine guns prior to 1986 was grandfathered, the court concluded in light of its discussion of the legislative history:

(1) that Congress intended to change the law to prospectively preclude the private possession of machine guns, and (2) that Congress intended to limit lawful transfer and possession of machine guns to instances authorized by the government for the benefit of federal, state, or local governmental entities. Consequently, in light of the plain language of section 922(*o*), as well as its legislative history, we hold that section 922(*o*) prohibits the private possession of machine guns not lawfully possessed prior to May 19, 1986.

*Id.* 907 F.2d at 1045.

■ Moreover, § 922(*o*)(2)(A) is properly read to permit only lawful possession of machine guns by federal or state agents acting in an official capacity. As noted by the court in *Farmer,* the legislative history of the exemption clarifies § 922(*o*)(2)(A) was enacted so that military personnel and police officers, when acting officially, could utilize and possess machine guns. *Id.* 907 F.2d at 1045. To read this subsection to permit an exception for private citizens would essentially eliminate the federal prohibition entirely. In *United States v. Aiken,* 974 F.2d 446, 449 (4th Cir.1992), the court stated, "Congress made it illegal for anyone other than government personnel to possess ... a machine gun in 1986, 18 U.S.C. § 922(*o*)(1)." The explicit language of the subsection coupled with the legislative history permits no other interpretation.

### The Government's Appeal

■ Mr. Warner sought a two-point reduction for acceptance of responsibility and a two-point reduction on the ground he converted the weapon to a machine gun as a hobby because he was intrigued with fire-

arms, a type of possession the Sentencing Commission did not take into consideration. The court granted both reductions which, combined with a criminal history category of II, resulted in a guideline range of 10–16 months' imprisonment instead of 24–30 months based on an offense level of 16.[1]

From the bench, the court stated:

I think that the possession of this weapon which was by a machinist who was converting something, not for the purpose of criminal use and more as a hobby and as an artifact, and was in the process of that.

I think those reasons would justify a departure downward in that the Commission didn't take into account that sort of situation and didn't have that in mind with respect to possession of automatic weapons.

The government's challenge of the downward departure is set within the framework of *United States v. Pena,* 930 F.2d 1486, 1494 (10th Cir.1991), which requires plenary review of the circumstances cited justifying departure and clearly erroneous review of the factual determinations. If departure is justified, the *Pena* analysis requires the degree of departure be reasonable.

The government notes U.S.S.G. § 2K2.1(a)(5) sets the offense level at 18 "if the offense involved a firearm listed in 26 U.S.C. § 5845(a)." One of the firearms listed in § 5845(a) is a "machine gun." 26 U.S.C. § 5845(a)(6). The guidelines make a general exception, however, for one who possesses a firearm "solely for lawful sporting purposes or collection." U.S.S.G. § 2K2.1(b)(2). That section states:

If the defendant, other than a defendant subject to subsection ... (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

■ Reading these provisions together, we readily conclude the possession of a machine

---

1. The government does not challenge the two-point reduction for acceptance of responsibility.

Otherwise, his offense level is 18. U.S.S.G. § 2K2.1(a)(5).

gun is excluded from the category of weapons within the rubric of sporting or collection guns. Indeed, the Sentencing Commission originally expressly excluded machine guns from "lawful sporting purposes or collection," and in November 1990, amended § 2K2.1(b)(1) further limiting the firearms eligible for a sentence reduction by inserting "other than a firearm covered in 26 U.S.C. § 5845(a)." This history implies the Commission considered a host of exceptions for gun enthusiasts, but intentionally and specifically excluded machine gun hobbyists from that range.

Mr. Warner's argument here and in the district court is based upon a premise that the terms "sportsman" or "collection" are the same as a "machinist, who has an interest in modifying a weapon as a hobby, with a sportsman or collector." In a hearing on Mr. Warner's sentencing contentions, his attorney described him as a

> gun enthusiast; he doesn't have a tremendous collection of guns but he goes to the shows and he takes an interest in these kind of things and being a machinist, he felt there was challenge here to modify the weapon, make it fully automatic and he did so not realizing he was committing a crime in doing that kind of thing.

Defendant states the district court recognized the difference and understood the subtle distinction the guidelines did not consider. He does not articulate, however, precisely what that distinction is.

Nevertheless, it is apparent the district court focused not on use of the weapon but on "the type of person who was in possession." Mr. Warner describes the set of factors "the Sentencing Commission failed to adequately take into account was *the gradation and types of people* who are found in possession of machine guns." (emphasis added). He contends, as a machinist, he was "converting something, not for the purpose of criminal use and more as a hobby and as an artifact." The distinction Mr. Warner perceives, thus, is based on a "class of people" not taken into consideration.

It is inescapable that the guidelines expressly exclude machine guns from recreational use or collection. Notwithstanding private possession of all machine guns is unlawful, counsel argues for "gradations within the machine gun possession category." A complete reading of the court's exchange with defense counsel reveals, however, that counsel really argued intended use, not gradations of types of people.

The fallacy in the defendant's position is that it overlooks the unalterable fact private possession of machine guns is proscribed without exception. No class of private persons, whether denominated by hobby or employment, is excused from that prohibition. The "special circumstance" urged by the defendant and found by the district court is simply without foundation. Moreover, if defendant's theory is correct, any number of persons might choose to dabble in hobbies that skirt the boundaries of illegal activities and escape criminal sanctions.[2]

■ Because no private person can escape culpability for possession of a machine gun, the Sentencing Commission did not have to consider the circumstance of a machinist's possession of such a weapon to fulfill a personal intellectual challenge. For the purpose of sentencing, possession of a machine gun is the same whether the possession is for criminal or intellectual purposes. The district court's contrary conclusion was erroneous.

■ Moreover, the district court ignored more pertinent evidence. As the government notes, the court failed to take into account Mr. Warner's threat to use a gun to settle the highway altercation. The only firearm Mr. Warner could have been referring to when he made that threat was the machine gun with three loaded magazines in his car. There is no evidence of the presence of any other weapon. The government correctly asserts, "These facts hardly support the innocuous scenario painted by Warner

---

2. Carrying defendant's theory to its extreme, one might expect that a chemist, for example, could claim an academic interest in the challenge of home processing and thus attempt to avoid criminal liability for manufacturing amphetamines. It must be clear that such a result is beyond the contemplation of law.

that the machinegun was not for a criminal purpose."

Had the machine gun been found in defendant's machine shop, for example, we would have a different setting from the one presented. It is undeniable, however, the evidence in this case is that defendant was transporting a partially hidden machine gun for an unexplained reason. It is also undeniable that when the gun was discovered, it already had been modified and the "challenge" had been met, thus leaving no logical connection between the defendant's excuse for possession and the fact the gun was being transported without reason. When these facts are coupled with Mr. Warner's threat to use a gun, even if there could have been a legal reason to accept his sentencing theory, no factual basis supports its application.

The sentence is **REVERSED,** and the case is **REMANDED** for resentencing in conformity with this opinion.

Before KRAVITCH, Circuit Judge, CLARK, Senior Circuit Judge, and PITTMAN *, Senior District Judge.