**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jesse WARNER, Defendant–Appellee.**

No. 94–4113.

United States Court of Appeals,
Tenth Circuit.

Dec. 19, 1994.

**1336**

Wayne T. Dance, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., and Mark K. Vincent, Sp. Asst. U.S. Atty., with him on the briefs), Salt Lake City, UT, for plaintiff-appellant.

Joseph C. Fratto, Jr., Salt Lake City, UT, for defendant-appellee.

Before SEYMOUR, Chief Circuit Judge; MOORE, Circuit Judge; and SAFFELS, District Judge.[*]

JOHN P. MOORE, Circuit Judge.

This is the second time we have considered this case on an appeal from sentencing. After the first remand, the district court held a downward departure was still warranted and sentenced accordingly. Concluding there are no proper grounds for departure, we once again reverse and remand for resentencing within the sentencing guidelines.

Jesse Warner was convicted of the unlawful possession of a machine gun. 18 U.S.C. § 922(o). Originally, the district court sentenced Mr. Warner to six months' confinement at a halfway house, six months' home confinement followed by three years' supervised release, and one hundred hours of community service. In imposing this sentence, the district court departed downward from the sentencing guidelines on the basis of the "sporting and collection" exception found at U.S.S.G. § 2K2.1(b)(2). We reversed and remanded for resentencing holding machine guns are excluded from this exception. *United States v. Warner*, 5 F.3d 1378 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1090, 127 L.Ed.2d 405 (1994).

On resentencing, the district court reimposed the original sentence, this time departing from the guidelines based on the "lesser harms" provision of U.S.S.G. § 5K2.11, which reads:

> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government policies were misdirected.

> In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

To support its sentencing decision, the district court found:

---

[*] The Honorable Dale E. Saffels, Senior Judge for the United States District Court for the District of Kansas, sitting by designation.

The court in reviewing all of the facts and circumstances from the totality of the circumstances here including the fact that the gun was not loaded, that it was not fully converted to a machine gun at the time, that any threat was not with reference to the brandishing of a weapon or indeed one that could have been fulfilled because it was an unshootable gun, and there was doubts as to whether the machine gun had actually been converted, and in view of the service of the term as it has been done and all of the other facts and circumstances including basic fairness and the abhorrence of the court to turn around what has been a successfully completed program for rehabilitation in the community and then go backwards into a term of home confinement or particularly I guess perhaps it would have to be community service, I'm going to reiterate the departure of, from level 16 to level 12 and a guidelines range of 10 to 16 months.

The government appeals Mr. Warner's sentence on two grounds. First, it asserts the district court erred in granting downward departure based on U.S.S.G. § 5K2.11. Second, it contends, lacking the authority to do so, the district court improperly considered Mr. Warner's post-sentencing conduct at resentencing.

### I.

The government argues the circumstances cited by the district court are insufficient to justify downward departure and the facts relied upon by the court were clearly erroneous. The government disputes the court's findings the gun had not been fully converted to an automatic weapon and Mr. Warner's threat was not with reference to the brandishing of a weapon. Indeed, our reexamination of the record discloses the evidence at trial established the gun had been fully converted to automatic mode when it was seized. Government agents test-fired the gun and found it operational as a machine gun. Further, the only weapon that Mr. Warner could have been referring to in his threat was the one found in his car.[1]

Mr. Warner argues the district court correctly concluded his situation did not fall within the category of evil which the statute seeks to prevent. In support, he cites *United States v. White Buffalo*, 10 F.3d 575 (8th Cir.1993), which, he contends, stands for the general proposition if "the basic conduct in a particular case did not cause or intend the harm sought to be prevented by the statute then a departure may be warranted." Ignoring the text in our prior opinion, Mr. Warner reasserts he modified the gun for innocent reasons and not to engage in illegal activity. He reiterates the claim he made at initial sentencing that he is a simple gun enthusiast and a machinist who wanted the professional challenge that such a modification represented. He thus allies himself with the innocent motive the court held dispositive in *White Buffalo*.

We review the district court's decision to depart downward from the sentencing guidelines using a three-step analysis. First, the court reviews de novo whether the circumstances cited by the district court justify a departure. Second, factual findings are reviewed under the clearly erroneous standard. Third, if the departure is justified, the court reviews the degree of departure to determine if it is reasonable. *Warner*, 5 F.3d at 1381; *United States v. Pena*, 930 F.2d 1486, 1494 (10th Cir.1991).

Given the record in this case, the district court erred in holding that downward departure was justified. First, the court's findings are clearly erroneous. In particular, the court's finding the gun was "unshootable"

---

**1.** In the first appeal, we stated:

The events resulting in Mr. Warner's conviction began when two police officers were hailed to a roadside in North Salt Lake City where they found several individuals, two of whom were engaged in what the government describes as "a physical altercation." At issue between the combatants, it seems, was which one had been driving recklessly. As the events unfolded, the officers learned Mr. Warner had menaced his antagonist, threatening he would get a gun.

*United States v. Warner*, 5 F.3d 1378, 1379 (10th Cir.1993), *cert. denied*, ── U.S. ──, 114 S.Ct. 1090, 127 L.Ed.2d 405 (1994). We also pointed out the officers discovered a machine gun in Mr. Warner's car in juxtaposition to three loaded magazines. *Id.* at 1379–80.

is inconsistent with the trial testimony.[2] Moreover, the court's expression of doubt the gun had been fully converted is contrary to the expert testimony and ignores Mr. Warner's own admission made at trial that he had altered the weapon. It was overlooked that an essential part of defendant's avoidance argument at the first sentencing was that Mr. Warner made the conversion but with innocent intent. *Warner*, 5 F.3d at 1380.

██ Nonetheless, we do not decide this case solely on the narrow issue that the court made erroneous factual findings because we believe the district court's entire rationale for departure was wrong. First, *White Buffalo* is easily distinguishable from this case. In *White Buffalo*, the defendant was convicted of possession of a sawed-off .22 caliber rifle. Mr. White Buffalo testified at his sentencing hearing that he used the gun to shoot skunks, weasels, and raccoons that killed his chickens. He had sawed off the barrel of his rifle because these predators often hid in crawl spaces underneath shacks next to his house, and the shortened barrel made hunting them significantly easier. As described by the Eighth Circuit, at sentencing the district court found:

> White Buffalo did not use the gun in a violent or offensive way and that White Buffalo's actions were not the kind of misconduct and danger sought to be prevented by the gun statute. The district court observed that although White Buffalo had the gun in his van, the gun was not loaded and there was no ammunition in the van or in White Buffalo's possession. The district court also noted that there was no evidence that White Buffalo ever brandished the gun or used it in a threatening way, White Buffalo had no criminal record, and White Buffalo's use of the weapon to shoot animals did not pose any quantifiable risk of accidental harm to others because he lived in a remote area of the reservation.

10 F.3d at 576. Mr. Warner's possession of the machine gun, along with three loaded magazines, and his threat to use the gun are all markedly different. Mr. Warner's claimed innocent rationale for possessing the machine gun is simply not objectively reasonable.

Indeed, as we previously noted, if the gun had been found in his machinist's shop, in a workroom at home, or even without ammunition in the trunk of his car, his innocent explanation would have had some credibility. However, it is patent the facts in this case do not objectively compare to those relied upon by the court in *White Buffalo* to find § 5K2.11 germane.

██ The lesser harms rationale for departing from the sentencing guidelines should be interpreted narrowly. This general principle holds particular force in cases like this one. The proscription of the possession of machine guns evinces a congressional purpose to prevent the circulation of military-style weapons in the general population. Although the Sentencing Commission suggests a military veteran's innocent possession of a trophy machine gun at home *may* warrant special dispensation in sentencing, that suggestion cannot be extended to someone who was in possession of a machine gun and ammunition in his car on an interstate highway.

There is simply nothing in this scenario which mitigates the commission of the offense for which Mr. Warner was convicted. Indeed, because of the public interest in keeping machine guns off our streets and highways, the limitation to reducing sentences set forth in § 5K2.11 prevails. In terms of the common interest of the populace, possession of a machine gun on a public highway is the functional equivalent of providing defense secrets to a hostile power. It is simply not to be tolerated, and hence not to be excused in sentencing through downward departure.

## II.

The government argues that the district court lacked the authority to consider Mr. Warner's post-sentencing conduct at resen-

---

2. At trial, both a deputy sheriff and a firearms expert testified they test-fired the weapon, and it discharged chambered rounds successively with only one pull of the trigger. (Vol. II, pp. 14 & 31).

tencing. The second reason for the court's downward departure was Mr. Warner's successful completion of a six-month period at the Community Treatment Center and a six-month period of home confinement. The government contends consideration of these factors was improper because the court lacked the authority to do so.

First, the government argues that Fed. R.Crim.P. 35, as amended, no longer allows a district court to reduce a sentence previously imposed absent a government motion pursuant to Rule 35(b). In support of this proposition, the government cites *United States v. Apple,* 962 F.2d 335, 337 (4th Cir.1992), and *United States v. Gomez–Padilla,* 972 F.2d 284, 285 (9th Cir.1992). In these two cases, the Fourth and Ninth Circuits had remanded a previous sentencing decision to the district court for reconsideration. On such a limited remand, both courts concluded that Rule 35 prohibited the consideration of post-sentencing conduct at resentencing. The government acknowledges the remand in the present case was not limited in nature as those in *Apple* and *Gomez–Padilla.* However, the government asserts Rule 35 prohibits the consideration of post-sentencing conduct even when the district court conducts "fully de novo resentencing." *United States v. Ortiz,* 25 F.3d 934, 935 (10th Cir.1994); *United States v. Smith,* 930 F.2d 1450, 1456 (10th Cir.), *cert. denied,* 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991) (Both cases describe "fully de novo resentencing.").

Second, in the alternative, the government argues even if the district court properly possessed the authority to consider post-sentencing conduct at resentencing, the departure was nonetheless inappropriate. Post-offense rehabilitative conduct has been found to be insufficient grounds for a grant of downward departure. *United States v. Ziegler,* 1 F.3d 1044 (10th Cir.1993); *United States v. Gaither,* 1 F.3d 1040 (10th Cir. 1993); *United States v. Pharr,* 916 F.2d 129 (3d Cir.1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). The government contends Mr. Warner's rehabilitation after completing his home detention is similar to the post-offense drug rehabilitation

considered insufficient to justify downward departure.

In response, Mr. Warner argues the district court's decision to depart downward should be judged upon the totality of circumstances involved in the case. The court did mention post-sentencing circumstances in its decision. However, these factors did not represent the entire rationale for the decision and should not be judged in isolation. Further, the resentencing conducted by the trial court was de novo resentencing, and was not limited to specific issues as was the case in *Apple* and *Gomez–Padilla.*

Additionally, Mr. Warner contends that U.S.S.G. § 5K2.0 supports downward departure even though it was not considered by the court at resentencing. Mr. Warner argues this court should independently consider the post-sentencing circumstances under this provision because they constitute "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." *Id.*

We review de novo whether the district court has the legal authority to consider post-sentencing conduct at resentencing. This is a question of first impression for this court. However, both the Ninth and Fourth Circuits have held upon remand for resentencing on a limited issue, district courts lack the authority to consider post-sentencing conduct. *Apple; Gomez–Padilla.* In *Gomez–Padilla,* the Ninth Circuit had vacated the defendant's sentence and remanded for resentencing "because the district court had improperly relied on inaccurate information that Gomez had received $3,000 for his role in the offense." *Gomez–Padilla,* 972 F.2d at 285. The remand was limited for the district court to resentence without considering this information. Similarly, in *Apple,* the Fourth Circuit vacated one of the defendants' sentences and remanded to the district court "for further proceedings to determine whether illegal electronic surveillance evidence was used against her...." *Apple,* 962 F.2d at 336. In both cases, the district court received a limited mandate for resentencing by the court of appeals.

This case is distinguishable from *Apple* and *Gomez–Padilla* because it involves fully de novo resentencing, which this court has recently described as follows:

> In *United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991), we held that an order vacating a sentence and remanding for resentencing defendant, directs the lower court to begin anew and that fully *de novo* resentencing is appropriate. The facts in *Smith* suggest that the sentencing court in that case may have only considered new factors in resentencing as opposed to receiving entirely new evidence. We now hold that *de novo* resentencing permits the receipt of any relevant evidence *the court could have heard at the first sentencing hearing. See United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993); *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir.1992).

*Ortiz*, 25 F.3d at 935 (emphasis added). While this characterization indicates resentencing is to be conducted as a fresh procedure, the latitude permitted is circumscribed by those factors the court could have considered "at the first sentencing hearing." Thus, events arising after that time are not within resentencing reach. Having arrived at this conclusion, we believe it unnecessary to determine whether post-sentencing rehabilitative conduct is an insufficient ground for justifying downward departure.

For the benefit of the district court, we must reiterate this case simply does not lend itself to a downward departure. Nonetheless, the sentencing court was convinced a prison term resulted in a punishment unsuitable to the crime. While we disagree with the court's judgment in that respect, we share its concern for the appearance of injustice presented by incarcerating Mr. Warner after his successful completion of his original sentence. Notwithstanding it was Mr. Warner's own misguided direction that led the court astray, the appearance of Jean Valjean harshness could be mitigated on resentencing by giving defendant credit for time spent in the completion of that sentence. U.S.S.G. § 5C1.1(e); *United States v. Miller*, 991 F.2d 552, 554 (9th Cir.1993).

Judgment is **REVERSED** and **REMANDED FOR RESENTENCING**.