UNITED STATES of America,
Plaintiff–Appellant,

v.

Edgar Wayne WEBB, Defendant–
Appellee.

No. 93–3400.

United States Court of Appeals,
Tenth Circuit.

Feb. 28, 1995.

Gregory G. Hough, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with him on the brief), D. Kan., Topeka, KS, for plaintiff-appellant.

Marilyn M. Trubey, Branch Chief (David J. Phillips, Federal Public Defender, with her on the brief), Federal Public Defender's Office for the D. Kan., Topeka, KS, for defendant-appellee.

Before TACHA, LOGAN and EBEL, Circuit Judges.

TACHA, Circuit Judge.

The only issue presented by this appeal is whether the district court erred in granting a downward departure from the sentence range prescribed by the United States Sentencing Guidelines (U.S.S.G.). We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I. Background

As part of a marijuana eradication effort, the Morris County sheriff, the Kansas National Guard, and the Kansas Bureau of Investigation (KBI) engaged in surveillance efforts to locate cultivated marijuana. Aerial surveillance revealed marijuana at defendant Edgar Wayne Webb's residence. The sheriff and a KBI agent confirmed that observation by viewing defendant's yard from a nearby football field. The next day, KBI agents executed a search warrant and found 142 cultivated marijuana plants in a fenced area of defendant's backyard. Defendant consented to a search of his house, where agents found additional marijuana. They also discovered a .22 caliber semiautomatic rifle with a homemade silencer attached and a second, partially-complete homemade silencer.

Defendant cooperated throughout the agents' search and admitted to cultivating the marijuana. He showed the agents his "personal stash" of marijuana and stated that he was addicted to the substance. Defendant asserted that he grew the marijuana for his own use and that he neither sold nor gave it away.

A jury convicted defendant of possession of marijuana in violation of 21 U.S.C. § 844(a), and of possession of unregistered firearms and firearms not identified by a serial number in violation of 26 U.S.C. § 5861(d) and (i).[1] The Sentencing Guidelines prescribed a range of twenty-seven to thirty-three months imprisonment for these offenses. The district court, however, sentenced defendant to three years probation (including six months of home confinement). The government now appeals the district court's decision to depart downward from the applicable guideline range.

## II. Discussion

The Guidelines prescribe sentencing ranges for a "'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Pt. A(4)(b), intro. comment. Although the Sentencing Reform Act states that district courts may depart from these ranges, it permits departure only where a "court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Guidelines themselves state that a departure is justifiable only in the "atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs' from the norm." U.S.S.G. Ch. 1, Pt. A(4)(b), intro. comment. Moreover, when a district court decides to depart from the Guidelines, it must state the specific reasons for doing so. 18 U.S.C.

---

1. Defendant was acquitted of possessing marijuana with intent to distribute and of using a firearm in relation to a drug trafficking crime.

§ 3553(c)(2); *United States v. Smith,* 888 F.2d 720, 723 (10th Cir.1989), *cert. denied,* 494 U.S. 1068, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990).

■ In reviewing a district court's departure from the Guidelines, we apply a three-step analysis:

> First, we determine *de novo* whether the circumstances cited by the district court admit of a factor not adequately taken into account by the Sentencing Commission which would justify departure. Second, we review the district court's factual findings supporting departure and determine whether they were clearly erroneous. Third, if the departure was justified, we review the degree of departure to determine whether it was reasonable.

*United States v. Ziegler,* 39 F.3d 1058, 1061 (10th Cir.1994); *see also United States v. Peña,* 930 F.2d 1486, 1494 (10th Cir.1991). In this case, we need address only the first step—whether the factors relied on by the district court justify its departure.

■ The district court believed that a "downward departure [wa]s not only authorized but absolutely essential." The court based its ruling on three general justifications: (1) defendant's psychiatric history and condition; (2) his son's need to have defendant care for him; and (3) the "unsophisticated nature of the silencers."[2] The court's primary emphasis was that defendant was the sole caretaker of his son and that the son "needs to be taken care of."

■ This court has upheld departures based in part on the adverse effect of incarceration on family members. *See Peña,* 930 F.2d at 1494–95 (upholding a downward departure for a defendant whose illegal conduct was aberrational, who was a single parent of a two-month old, and who supported another daughter and her infant). But the Guidelines start from the premise that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. Consequently, a district court must identify some extraordinary personal circumstances warranting mitigation in sentencing to justify a departure.

In the case at bar, the district court was sensitive to the relationship between defendant and his son, Dylan. Indeed, some of the medical evidence supports the finding that defendant is a loving and conscientious parent and that his son has served as a stabilizing influence in defendant's life. There was also some evidence that defendant contributed to his son's well-being; the son apparently was on the honor roll in school before defendant's incarceration but was having difficulty thereafter.

The court may also have relied on defendant's unusual family situation. Defendant's three ex-wives all had children by their prior marriages. Defendant's son is his only child, the product of his third marriage. In that divorce defendant was awarded custody. The presentence report indicates Dylan would stay with a stepson of defendant if he were incarcerated. That stepson is apparently in his early twenties and never finished high school.

Although unfortunate, these circumstances are insufficiently aberrational to place defendant's case outside the "heartland" contemplated by the Guidelines; that is, this is not an "atypical case" in which "a particular guideline linguistically applies but where conduct significantly differs from the norm." The defendant's role as a "sole caretaker" and the child's need "to be taken care of" do not render the circumstances of this case

---

**2.** Specifically, the district court stated:

> Departure is based on the defendant's psychiatric history, testimony, and statements made by doctors in this case. There is a clear indication that incarceration would significantly affect the defendant's psychiatric condition. Also, Webb is the sole caretaker of his minor child. In addition, the unsophisticated nature of the silencers warrants consideration. Overall, the Court finds this case is outside the heart land and warrants departure.... I'm willing to take this chance [of a mistake] and see if we can't help this man and his son, and that is the reason basically for this departure.... I am willing at this time to have confidence in you [defendant] to this extent, and it's primarily because I feel sorry for your son, and certainly he needs to be taken care of, and I know that you're going to take care of him.

extraordinary. Defendant's family situation therefore cannot justify a departure from the applicable guideline range.

■ The district court also relied on defendant's psychiatric history and other corroborating evidence concerning his mental condition offered at sentencing. Data of diminished capacity can support a departure under section 5K2.13 of the Guidelines.[3] The medical evaluations provided to the district court, however, did not address the specific issues required by that section. The psychiatric reports document a significant history of mental problems and contain diagnoses— dysthymia, post-traumatic stress disorder, panic disorder, personality disorder with paranoid features—which may not have resulted from defendant's voluntary use of drugs. But they do not address or lead to the conclusion that defendant suffered from "significantly reduced mental capacity."

The district court stated that "incarceration would significantly affect the defendant's psychiatric condition," and referred to "defendant's psychiatric history." But the court did not state how this would be extraordinary compared with other defendants with psychiatric problems who are incarcerated. Defen-

dant's psychiatric history therefore cannot justify the court's departure.

■ Finally, the district court cited "the unsophisticated nature of the silencers" as a reason for its departure. The silencers were clearly unsophisticated; they were made of "[o]ld toilet paper tubes and stuffing from some old stuffed animals."[4] After a two-point reduction for acceptance of responsibility, defendant's offense level was eighteen: The convictions for possession of unregistered firearms (the silencers) mandated eighteen points toward the base offense level calculation under U.S.S.G. § 2K2.1(a)(5), and defendant received two additional points for lack of identifying serial numbers under § 2K2.1(b)(4).

■ The offenses for which defendant was convicted are part of the National Firearms Act, which includes silencers in the definition of firearms. 26 U.S.C. § 5845(a)(7).[5] The Act requires every "manufacturer, importer, and maker" of a firearm to register with the Secretary of the Treasury every firearm it manufactures, imports, or makes. *Id.* § 5841(b) and (c). The specific sections under which defendant was convicted prohibit receiving or possessing an unregistered firearm, *id.* § 5861(d), and receiving or possess-

3. Section 5K2.13 of the Guidelines states:
If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

4. On cross-examination by government counsel, defendant's son Dylan responded to questions about the construction of the silencers as follows:
Q. Okay. And that silencer or—how many of the toilet paper tubes did you have on that?
A. One.
Q. And so it was about—was one of them big rolls or was it one of the normal rolls?
A. Normal.
Q. Okay. So it's about that (indicating).
A. Yes.
Q. About four or five inches.
A. Yeah.
Q. Okay. And then on the inside of it, you had put some toiler paper and some stuffed animal stuffing?

A. No toilet paper, just some stuff—animal stuffing, and something to keep it from collapsing inside the thing itself.
Q. What did you put in there to keep it from collapsing down?
A. Some mesh screen.
Q. Where did you get that at?
A. It was laying around.
Q. Was it up in the attic?
A. Yeah, it came from—I guess it came from the attic. It was downstairs.

5. More specifically, section 5845(a) states that "[t]he term 'firearm' means ... (7) any silencer (as defined in section 921 of title 18, United States Code)." The referenced section, 18 U.S.C. § 921(a)(24), in turn provides:

The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

ing a firearm not identified by a serial number, *id.* § 5861(i). Defendant made the silencers involved in the charge. Thus, his duty as manufacturer was to stamp a serial number on the silencers and register them within twenty-four hours of the close of the day on which they were made. 27 C.F.R. § 179.103; *see also United States v. Walsh,* 791 F.2d 811, 818 (10th Cir.1986).

In this case, the district court may have thought that defendant's silencers represented a significantly less serious violation of the Firearms Act than those usually prosecuted under these provisions. Alternatively, the court may have thought it unrealistic to expect defendant to stamp an identification number on a toilet paper roll used as the exterior covering of the silencer. The court may even have thought that Congress intended the Firearms Act to punish criminality qualitatively different from defendant's behavior. Even so, none of these explanations adequately justify the court's departure from the applicable guideline range; none is sufficient to adjudge the circumstances of this case outside the "heartland" contemplated by the Guidelines. The "unsophisticated nature" of the silencers therefore cannot justify the district court's departure.

### III. Conclusion

For the aforementioned reasons, we find the justifications cited by the district court insufficient to set this case outside the "heartland" contemplated by the Sentencing Guidelines. The decision of the district court to depart from the applicable guideline range is therefore **REVERSED**. The case is **REMANDED** for resentencing within the prescribed range of twenty-seven to thirty-three months imprisonment.

LOGAN, Circuit Judge, dissenting:

The majority finds this case to be wholly within the "heartland" contemplated by the Sentencing Guidelines so that no departure is possible. Although I agree that we have to reverse the district court, I would remand for resentencing.

The district court obviously believed downward departure was warranted here. It stated, "This is a case that I think downward departure is not only authorized but absolutely essential." II R. 27. As the majority opinion states, the district court mentioned three general bases as justification for his departure: defendant's psychiatric history, the family situation—particularly the son's need to have defendant care for him, and the "unsophisticated nature of the silencers." I agree with the majority that the court's statement of reasons is inadequate. But I here comment on each of the justifications given by the district court and why I believe there should be remand for resentencing instead of an outright reversal.

At sentencing defendant sought downward departure based upon U.S.S.G. § 5K2.13 (diminished capacity) p.s. When the district court relied upon defendant's psychiatric history it may have meant defendant had diminished capacity. All the appellate record contains is the testimony and reports of two psychiatrists and a social worker that chronicle defendant's psychiatric history, which is an extensive one.[1] The psychiatric reports and testimony, however, do not address or conclude that defendant suffered from a "significantly reduced mental capacity."

I cannot tell whether diminished capacity was a defense at trial, as we do not have the trial transcript. If diminished capacity was a defense at trial and the jury found guilt beyond a reasonable doubt, then I believe that finding would be controlling on the district court for sentencing purposes. That situation is distinguishable from one in which a defendant is acquitted of a charged offense and the court, because the preponderance of the evidence standard is applicable to sentencing proceedings, can treat the defendant as if he had been convicted.

If diminished capacity was not a defense at trial, then I believe the court has the authority to ask the psychiatrists to address that issue in the sentencing proceedings, and make a determination based on the prepon-

---

1. The government, as appellant, has the responsibility of providing us a record sufficient to make

an appropriate disposition of this appeal.

derance standard. Although I think this is the weakest point in the district court's justification for departure, without the trial transcript I am not as confident as the majority that no diminution is permitted on this ground.

I agree with the majority, of course, that the guidelines start from the premise that "[f]amily ties and responsibilities" are not relevant in sentencing, U.S.S.G. § 5H1.6 p.s.; therefore to justify a departure the district court must identify some extraordinary personal circumstances warranting mitigation in sentencing. However, as the majority recognizes, this court has upheld departures based in part upon the adverse effects of incarceration upon family members. *United States v. Pena,* 930 F.2d 1486, 1486 (10th Cir.1991). The majority opinion recites some of the evidence of the special relationship between defendant and his son, the son's needs, and the unusual family situation. I think these factors possibly could serve as a basis for departure. They need to be further developed and explained, of course. But the majority opinion forecloses the district court from revisiting this issue.

Where I really have trouble with the majority's conclusion is with respect to the silencers. I certainly agree that a mere reference to the "unsophisticated nature" of the silencers is not sufficient to explain why a downward departure is justified. Nevertheless, other than his convictions for possession of unregistered firearms and firearms not identified by a serial number, defendant's only conviction was for possession of marijuana—which would produce an offense level of 4. Defendant's offense level was 18 after a two-point reduction for acceptance of responsibility. The convictions for possession of unregistered firearms provided essentially all of the base offense level calculation under U.S.S.G. § 2K2.1(a)(5) (eighteen points), with two more for lack of identifying serial numbers under § 2K2.1(b)(4). Although the

Marlin .22 rifle, which had identification numbers, was referenced in each of these counts, the silencers had to provide the basis of the conviction for the following reasons.

The weapons offenses charged, violations of 26 U.S.C. § 5861(d) and (i), are part of the National Firearms Act, enacted under the government's taxing power. That Act requires every "manufacturer, importer, and maker" of a firearm to register with the Secretary of the Treasury every firearm it manufactures or imports. *Id.* § 5841(b). The manufacturer or importer who makes a transfer has to register the firearm to the transferee; thus the burden of registration is on the transferor. *See id.* Firearms are defined to include silencers. *Id.* § 5845(a)(7).

The specific sections under which defendant was charged deal with receiving or possessing an unregistered firearm, § 5861(d), and receiving or possessing a firearm not identified by a serial number, § 5861(i). Defendant is not a "transferor," and the rifle had identification numbers. The only items that could bring defendant under the Act were the ones he manufactured and had no numbers—the silencers. Because defendant made the silencers involved in the charge he did not "receive" them; he only possessed them. Thus, as the majority notes, his duty as manufacturer was to stamp a serial number on the silencers and register them within twenty-four hours of the close of the day in which they were made. *See United States v. Walsh,* 791 F.2d 811, 818 (10th Cir.1986); 27 C.F.R. § 179.103. The government, of course, uses the "receive or possess" prohibition of unregistered or unidentifiable firearms to convict those who possess dangerous weapons such as machine guns—*see Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)—or hand grenades—*see United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), not those who possess rifles purchased legally.[2]

---

**2.** Defendant's possession of a regular Marlin .22 rifle with an identifying serial number would not be a violation of this statute. *See Staples v. United States,* —— U.S. ——, ——, 114 S.Ct. 1793, 1801, 128 L.Ed.2d 608 (1994) ("Moreover, despite the overlay of legal restrictions on gun ownership, we question whether regulations on

guns are sufficiently intrusive that they impinge upon the common experience that owning a gun is usually licit and blameless conduct. Roughly 50 per cent of American homes contain at least one firearm of some sort, and in the vast majority of States, buying a shotgun or rifle is a simple transaction that would not alert a person to

Silencers on guns are often utilized by organized crime figures, and it is understandable that they would be included in the list as a "firearm" that the manufacturer must register and mark with identification numbers. But the silencers involved in the instant case were not what we think of as silencers, at least on the basis of the evidence in the appellate record. These silencers were made of "[o]ld toilet paper tubes and stuffing from some old stuffed animals." I.R.Supp. 56. The evidence in the appellate record, which the district court quite apparently believed, was that in constructing these silencers defendant intended to muffle the sound of .22 rifle shots he intended to aim at animals invading defendant's yard. Of course, it seems unrealistic to expect defendant to stamp an identification number on the toilet paper roll used as exterior covering of these homemade contraptions.

The silencers involved in the instant case are not included in the appellate record, nor does that record contain the evidence put on by the government with respect to those items.[3] And we cannot tell by the short reference to the "unsophisticated" nature of the silencers the thinking of the judge or his reasoning for the particular departure he selected. But based on the record presented to us on appeal, I simply cannot imagine how the jury could have found defendant guilty on these firearms counts, or why the district court did not set aside those verdicts. Possibly there is more in the trial record than we have in the appellate record. But without more I simply do not believe that this is a "heartland" case with respect to these homemade toilet paper roll silencers. I would not deny the district court the right to rely upon this as a basis for departing downward.

For the reasons stated I respectfully dissent.

regulation any more than would buying a car.") (footnotes omitted).

**3.** The majority opinion in its footnote 3 recites all the evidence that is in the appellate record as to how these "silencers" were constructed.