**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,

v.

JOSEPH ARCHULETA,

        Defendant - Appellee.

No. 96-2269

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO
### (D.C. NO. CR-96-119-MV)

---

Richard A. Friedman, Department of Justice, Washington, D.C. (John J. Kelly, U.S. Attorney, and James T. Martin, Assistant U.S. Attorney, Albuquerque, New Mexico, with him on the briefs), for Appellant.

J. Wayne Griego, Albuquerque, New Mexico, for Appellee.

---

Before **ANDERSON**, **EBEL**, and **LUCERO**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Joseph Archuleta pleaded guilty to one count of providing false statements in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6), and to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court departed downward eight levels from the guideline range and imposed a sentence of five months' imprisonment, five months' home confinement, and three years' supervised release. The stated basis for the downward departure was that Archuleta was the sole support for two children, that he cared for his elderly, diabetic mother, and that no one else was able to care for them. On appeal, the government essentially challenges the legal sufficiency of this stated ground for departure. In the alternative, it argues that the case should be remanded for further evidence on the availability, or lack thereof, of care for the children and mother by one or more of Archuleta's eight brothers and sisters living in the area. Because we conclude that the family circumstances in question are within the heartland of the sentencing guidelines, we vacate the sentence and remand for resentencing.

## BACKGROUND

Following Archuleta's guilty plea, the United States Probation Office prepared a presentence report ("PSR") which calculated a combined offense level of 19 and a criminal history category II under the United States Sentencing

Commission Guidelines Manual.[1]  The PSR also indicated "factors that may

warrant departure" from the Guidelines as follows:

> Pursuant to section 5K2.0, Grounds for Departure, the sentencing Court may impose a sentence outside the range established by the applicable guidelines if the Court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines, and which would result in a sentence different from what was described in the guidelines.
>
> There appear to be mitigating circumstances concerning this case in that the defendant is a single parent of two minor children and also cares for his mother, age 74, who is diabetic and takes daily insulin treatments.  If a downward departure was granted to an offense level within Zone C, the Court could impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment.  This departure would allow the defendant to continue to care for his four dependents financially and still satisfy a sentence of imprisonment.

PSR ¶¶ 55, 56.  Neither Archuleta nor the government objected to any part of the

PSR prior to the sentencing hearing, and neither party filed a motion prior to the

hearing.  R. Vol. III at 2-3.

---

[1]The PSR reached a level of 19 by starting from a base offense level of 20, increasing the sentence by two levels pursuant to U.S. Sentencing Guidelines Manual § 2K2.1(b)(1)(B) (1995) ("USSG") because the offense involved seven firearms, and then granting the defendant a three-level downward adjustment under §§ 3E1.1(a) and 3E1.1(b)(2) for accepting responsibility and for assisting the authorities, respectively. PSR ¶¶ 14-24.

At sentencing, Archuleta's counsel argued that the court should depart downward into Zone C because Archuleta is the sole provider for his family, is sorry for what he did, is a good person, and has stayed out of trouble for the most part. R. Vol. III at 3-9. Counsel for the government argued that his circumstances were not so exceptional as to take the case out of the heartland and to warrant a downward departure. Id. at 11-13. The district court then adopted the PSR's calculation of offense level 19 and criminal history category II as well as its findings, noting that no evidentiary hearing was needed because there were no disputed facts.[2] Id. at 14-15. The court further determined that a downward departure of eight levels was warranted because Archuleta was the sole support for two of his children,[3] because he provided care for his diabetic, elderly mother, and because they had no one else to turn to. Id. at 14, 17.

Counsel for the government objected to the downward departure, arguing that paragraph 32 of the PSR, which refers to Archuleta's siblings who lived nearby, indicates that there might be others who could provide support for

---

[2]The court also noted that it had received letters from Defendant, his mother, two sons, and pastor. R. Vol. III at 3.

[3]The mother of these two children is apparently alive, but Defendant's counsel told the court that she rarely visits and does not support the children financially. R. Vol. III at 5, 10. The PSR indicates that Defendant believes the mother is unfit to raise these two children. PSR ¶ 33. Defendant has another child who lives with her mother, and although Defendant does not pay child support, he says he helps to pay for some of her expenses. R. Vol. III at 10.

Archuleta's dependents.[4]  Id. at 21-22.  The court then asked Defendant's counsel to confer with the Defendant and some of his siblings who were present in the courtroom to find out if any of them could care for their mother and Defendant's two children.  Id. at 25, 27-28.  After a short recess, Defendant's counsel told the court that Defendant's mother requires 24-hour care and that none of the siblings could provide care for either her or the children.[5]  Id. at 28-31.  The court then reaffirmed its downward departure and sentenced the Defendant to five months' imprisonment, five months' home confinement, and three years' supervised release.  Id. at 15-16, 18, 31-32.

---

[4]About the Defendant's siblings, the PSR makes the following statements:

[Defendant] is the youngest of 12 children, 8 girls and 4 boys, born to the union of Ramon Archuleta (deceased) and Pilar (nee Gallegos). . . . The defendant's siblings reside in the Espanola area with the exception of a sister who resides in Equador and another who resides in Alamogordo. . . . [H]is brother, Manuel, died of carbon monoxide poisoning in 1985.

PSR ¶ 32.

[5]Counsel for the Defendant told the court about six of the siblings and described why each, in turn, could not care for their mother and the Defendant's children.  Neither the court nor counsel for the government pressed for any additional information about the siblings' ability to care for the mother and children.  Counsel for the government did, however, renew his objection to the downward departure.  R. Vol. III at 28-32.

## DISCUSSION

We review a district court's decision to depart from the Sentencing Guidelines for abuse of discretion. Koon v. United States, 116 S. Ct. 2035, 2047-48 (1996); United States v. Lowe, 106 F.3d 1498, 1501 (10th Cir.), cert. denied, 117 S. Ct. 2494 (1997). In Koon, the Supreme Court found "[a] district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Id. at 2046. The Court reasoned that district courts have an "institutional advantage" over appellate courts in making departure decisions since they deal with such determinations on a daily basis. Id. at 2046-47.

Nevertheless, the Court also concluded that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." Id. at 2047. "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Id. at 2048. As we recently stated, in reviewing departure decisions we employ a unitary abuse of discretion standard, which includes the following inquiries:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

-6-

United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997). We described the first inquiry as a legal question and the second as essentially a factual question. Id. In particular, we said that what constitutes a guideline's heartland is a legal question and our review on that question is not deferential. Id. at 1303 n.4.

It is not always an easy matter to determine where de novo review ends and deference begins.[6] This is especially true where family circumstances are concerned. But, even though it is nearly impossible to draw bright lines in this area, the governing principles are clear.

Congress directed that the "Commission shall assure that the guidelines and policy statements . . . reflect the general inappropriateness of considering the . . . family ties and responsibilities . . . of the defendant." 28 U.S.C. § 994(e); see USSG Ch.5, Pt.H, intro. comment. Accordingly, the guidelines provide that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining

_____

[6]The Circuit Courts after Koon have drawn the line in different places. For example, compare United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996) ("When the determination of whether a factor is present to an exceptional degree amounts merely to an evaluation of a showing's adequacy, it becomes a legal question, and our review is de novo to determine whether the district court abused its discretion."), with United States v. Galante, 111 F.3d 1029, 1034 (2d Cir. 1997) (The district court "is in the best position to make comparisons and decide what combination of circumstances take a case out of the ordinary and make it exceptional. As an appellate court, we owe substantial deference to the district court's findings in this regard . . . ."). See generally Dana L. Shoenberg, Departures for Family Ties and Responsibilities after *Koon*, 9 Fed. Sentencing Rep. 292 (1997).

whether a sentence should be outside the applicable guideline range." USSG § 5H1.6, p.s.

The Supreme Court has made it clear that when a factor is discouraged because it is not "ordinarily relevant," or when the factor has already been taken into consideration by the guidelines, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 116 S. Ct. at 2045; see also 18 U.S.C. § 3553(b), (e); USSG §§ 5K2.0, p.s., 5K1.1, p.s. The defendant bears the burden of proving he is entitled to a downward departure. See, e.g., United States v. Reed, 114 F.3d 1053, 1058 (10th Cir.), cert. denied, 1997 WL 562150 (U.S. Oct. 14, 1997); United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996); United States v. Dyce, 91 F.3d 1462, 1471 (D.C. Cir.), cert. denied, 117 S. Ct. 533 (1996); United States v. Higgins, 967 F.2d 841, 846 (3d Cir. 1992); United States v. Maldonado-Campos, 920 F.2d 714, 717 (10th Cir. 1990).

The question before us, then, is whether the record in this case establishes family circumstances so exceptional that they constitute the rare case justifying a departure from the guidelines which already recognize the reality of difficult family circumstances for many defendants and which discourage making an additional allowance on that basis.

The district court stated that "generally we don't have a situation in which the children have one parent and one parent only and that's the parent that's being removed." R. Vol. III at 28. This narrow view of the heartland is inconsistent with our decision in United States v. Webb, 49 F.3d 636, 638-39 (10th Cir. 1995), where we reversed the district court's downward departure, which was based, inter alia, on his status as a sole caretaker of his one son who was on his school's honor roll before defendant's incarceration but was having trouble thereafter. We stated that the "defendant's role as a 'sole caretaker' and the child's need 'to be taken care of' do not render the circumstances of this case extraordinary."[7] Webb, 49 F.3d at 638-39. It is also inconsistent with our recent decision in United States v. Rodriguez-Velarde, No. 96-2292, 1997 WL 640618, at *3 (10th Cir. Oct. 17, 1997) (collecting cases), in which, surveying the law in other circuits, we said that "a defendant's status as a single parent does not constitute an extraordinary family circumstance warranting departure."

However, the district court did not solely rely on the Defendant's care of his children as its basis for departure; it also cited Archuleta's care of his diabetic mother and their lack of alternate sources of support as extraordinary

---

[7]In Webb, we recognized that the PSR indicated the son would stay with the defendant's stepson if the defendant were incarcerated. 49 F.3d at 638. In the case at bar, the PSR does not directly discuss where the children and mother could go if the Defendant were incarcerated; such information in a PSR would undoubtedly aid the district court in making its sentencing decision.

circumstances. R. Vol. III at 14-15. The district court specifically relied on United States v. Pena, 930 F.2d 1486 (10th Cir. 1991), for its decision to depart downward, stating, "the circumstances that have been brought to my attention are very comparable, if not even more severe than the situation in the Pena case." R. Vol. III at 31. In Pena, we affirmed the district court's downward departure because not only was the defendant the sole support for her two-month-old child, her 16-year-old daughter, and her daughter's two-month-old child, but also she had only committed a single act of aberrant behavior. 930 F.2d at 1494-95. We stated that because single acts of aberrant behavior are not adequately taken into consideration by the guidelines, "[t]he aberrational character of her conduct, *combined with* her responsibility to support two infants, justified a departure." Id. at 1495 (emphasis added); see also United States v. Tsosie, 14 F.3d 1438, 1441-42 & n.3 (10th Cir. 1994). In contrast, the district court in this case made no finding that Archuleta's criminal acts constituted a single aberrant episode or were utterly inconsistent with his character.

With respect to the additional factor in this case of Archuleta's diabetic mother, the record is scarce on the details of the care she requires.[8] Nor does the

---

[8]At sentencing, Defendant's counsel told the court that Defendant's mother requires 24-hour care, that she required insulin, and that she had the potential to go into shock. R. Vol. III at 29. The record reveals little of the severity of the condition and, for instance, whether she is able to administer her own insulin either by patch or injection.

(continued...)

record say anything about the mother's mental and physical abilities, including her ability to prepare her own meals and, perhaps, partially care for the children. Assuming the mother cannot administer her own medication or maintain a properly balanced diet, the record is equally silent on the availability of home nurse visits and other services for the sick and elderly.

The record reflects the representation of Archuleta's counsel that six of his eight siblings in the Espanola area cannot undertake their mother's care, or that of Archuleta's children. There is no evidence regarding the remaining two siblings, or the availability of other alternatives for care. As we said in Rodriguez-Velarde:

> While we are not unsympathetic to the circumstances facing defendant's children, defendant has not shown that these circumstances are substantially different than those facing the minor children of any single parent who is about to be incarcerated. "A sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children. It is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes."

Rodriguez-Velarde, 1997 WL 640618, at *3 (quoting United States v. Brand, 907 F.2d 31, 33 (4th Cir. 1990)).

---

[8](...continued)
We also note that the PSR indicates Archuleta had a job, which would have required him to be away from his mother and her needs. PSR ¶ 40.

-11-

In sum, this departure, based entirely on Archuleta's care and support of three dependents, his two children and his diabetic mother, is not supported by our cases. In addition to Webb and Rodriguez-Velarde, referred to above, see United States v. Ziegler, 39 F.3d 1058, 1062-63 (10th Cir. 1994) (downward departure based on stable marriage, support of three minor children, and other factors, reversed); and, an opinion filed contemporaneous to this one, United States v. Gallegos, Nos. 96-2240, 96-2242 (10th Cir. Nov. __, 1997) (downward departure based on, among other things, sole support of young child and partial support of parents, reversed). We also have dismissed defendants' appeals from district courts' refusals to depart downward based on family circumstances. See, e.g., United States v. Williamson, 53 F.3d 1500, 1529-30 (10th Cir. 1995).

In general, as reflected by these decisions, our concept of family circumstances falling within the guidelines' heartland is consistent with the overwhelming majority of the circuits.[9] There are plenty of cases going the other

_____

[9]Cases disallowing downward departures based on family ties and responsibilities because they were not extraordinary include the following: United States v. Rybicki, 96 F.3d 754, 758-59 (4th Cir. 1996) (responsible for wife with mental health problems and son with neurological problems who was in need of special supervision); United States v. Dyce, 91 F.3d 1462, 1466-67 (D.C. Cir.) (mother with two young children and one infant who was breast feeding), cert. denied, 117 S. Ct. 533 (1996); United States v. Allen, 87 F.3d 1224, 1225 (11th Cir. 1996) (primary caretaker of 72-year old father who had Alzheimer's and Parkinson's diseases); United States v. Londono, 76 F.3d 33, 35-36 (2d Cir. 1996) (wife, who had undergone fertility treatment, would not be able to conceive due to length of defendant's sentence); United States v. Calhoun, 49 F.3d 231, 237 (6th
(continued...)

-12-

way as well,[10] although many of them involve a combination of circumstances other than family ties and responsibilities as did <u>Pena</u> in our circuit.[11] But the Guidelines are clear that in this most difficult and justifiably sympathy-evoking

---

[9](...continued)
Cir. 1995) (responsible for infant child); <u>United States v. Brown</u>, 29 F.3d 953, 961 (5th Cir. 1994) (single mother of two young children with medical problems who would have to live with their great-grandmother); <u>United States v. Miller</u>, 991 F.2d 552, 553 (9th Cir. 1993) (mother of two small children who "would be placed at potential risk"); <u>United States v. Harrison</u>, 970 F.2d 444, 447-48 (8th Cir. 1992) (single mother of child who, in defendant's absence, would be cared for by an alleged alcohol and drug abuser); <u>United States v. Chestna</u>, 962 F.2d 103, 107 (1st Cir. 1992) (single mother of infant and three young children); <u>United States v. Mogel</u>, 956 F.2d 1555, 1565 (11th Cir. 1992) (supported two minor children and mother); <u>United States v. Cacho</u>, 951 F.2d 308, 310-11 (11th Cir. 1992) (mother of four young children); <u>United States v. Thomas</u>, 930 F.2d 526, 529-30 (7th Cir. 1991) (single parent with three mentally disabled adult children and one grandchild); <u>United States v. Headley</u>, 923 F.2d 1079, 1082-83 (3d Cir. 1991) (single mother of five young children); <u>United States v. Brand</u>, 907 F.2d 31, 33 (4th Cir. 1990) (sole custodial parent of two young children who will be placed in the care of non-relatives); <u>see also</u> Jody L. King, <u>Avoiding Gender Bias in Downward Departures for Family Responsibilities under the Federal Sentencing Guidelines</u>, 96 Ann. Surv. Am. L. 273, at *74-76 nn.42-58 (1996) (collecting cases).

[10]<u>See, e.g.</u>, <u>United States v. Haversat</u>, 22 F.3d 790, 797-98 (8th Cir. 1994) (defendant's wife suffered severe, potentially life-threatening psychiatric problems and physician testified defendant's care was irreplaceable element of her treatment); <u>United States v. Sclamo</u>, 997 F.2d 970, 972-74 (1st Cir. 1993) (defendant had special relationship with his lover's son, who had psychological and behavior problems and might regress in absence of defendant); <u>United States v. Gaskill</u>, 991 F.2d 82, 83-86 (3d Cir. 1993) (sole provider for manic-depressive wife who was unable to care for herself); <u>United States v. Johnson</u>, 964 F.2d 124, 128-30 (2d Cir. 1992) (sole support for infant, two other young children, and one grandchild).

[11]<u>See, e.g.</u>, <u>United States v. Alba</u>, 933 F.2d 1117, 1122 (2d Cir. 1991) (among other factors, defendant had been married 12 years, and cared for two children, his disabled father, and his grandmother); <u>United States v. Deigert</u>, 916 F.2d 916, 918-19 (4th Cir. 1990) (among other factors to be considered by district court on remand, defendant was pregnant and the mother of several children).

area, courts should depart downward only in rare cases. Whatever that may mean on a case-by-case basis, we conclude that this is not one of those cases. Because of this conclusion it is unnecessary for us to address the government's alternative position regarding a remand for further evidence on the availability of family care.[12]

---

[12]Archuleta urges us to dismiss the government's challenge to the district court's downward departure because the "Presentence Report addressed factors that may warrant departure and the Government failed to timely object to such factors." Appellee's Br. at 2. Even assuming the government has the responsibility to object to a recommendation for downward departure, the PSR in this case did not include any such recommendation. It merely recited USSG § 5K2.0 and then stated:

> There appear to be mitigating circumstances concerning this case in that the defendant is a single parent of two minor children and also cares for his mother, age 74, who is diabetic and takes daily insulin treatments. *If* a downward departure was granted to an offense level within Zone C, the Court *could* impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. This departure would allow the defendant to continue to care for his four dependents financially and still satisfy a sentence of imprisonment.

PSR at ¶ 56 (emphasis added). We agree with the government that this does not constitute a recommendation. The statement is not "material information, sentencing classification, sentencing guideline ranges, [or] policy statements contained in or omitted from the presentence report." Fed. R. Crim. P. 32(b)(6)(B). Rather, it merely sets forth facts that may warrant a departure; the determination of whether those facts are legally sufficient to justify a departure is left to the district court to decide. An invitation for the court merely to consider something is not an objectionable matter.

Furthermore, even if an objection was required, the government did object at the sentencing hearing. Fed. R. Crim. P. 32(b)(6)(D) provides that "[f]or good cause shown,

(continued...)

-14-

## CONCLUSION

For the reasons stated above, we VACATE the sentence and REMAND for resentencing not inconsistent with this opinion.

---

[12](...continued) the court may allow a new objection to be raised at any time before imposing the sentence." Thus, the court has discretionary authority to hear the objection to a PSR's recommendation for a downward departure even if the government did not properly object to the PSR prior to sentencing. Here, the court heard the government's objection at the sentencing hearing without specifically addressing whether there was good cause, but Archuleta did not contemporaneously challenge the court's decision to hear the government's argument. In such a case, no explicit finding of good cause is necessary to preserve the issue for appeal. See United States v. Perkins, 89 F.3d 303, 306-07 (6th Cir. 1996). Finally, even further assuming some error below, we would conclude that the district court's decision to hear the government's argument was not plain error. United States v. Ciapponi, 77 F.3d 1247, 1249-50 (10th Cir.), cert. denied, 116 S. Ct. 1839 (1996); United States v. Saucedo, 950 F.2d 1508, 1511, 1518 (10th Cir. 1991), overruled on other grounds by Stinson v. United States, 508 U.S. 36 (1993).