UNITED STATES of America,

v.

Kelvin EDWARDS.

No. 01–152–1.

United States District Court,
E.D. Pennsylvania.

Dec. 31, 2003.

As Amended Jan. 16, 2004.

Kelvin Edwards, Minersville, PA, pro se.

Christopher G. Furlong, Media, PA, Christopher G. Furlong, Springfield, PA, Peter A. Levin, Philadelphia, PA, for Defendant.

Nancy Beam Winter, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM*

DuBOIS, District Judge.

## I. *BACKGROUND*

On March 20, 2001, a federal grand jury returned an eleven count Indictment charging petitioner, Kelvin Edwards, with conspiracy in violation of 18 U.S.C. § 371 (Count One); making false statements while purchasing firearms and aiding and abetting the same in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Counts Two through Eight); and being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) (Counts Nine through Eleven). Following petitioner's arrest, Peter A. Levin, Esquire, was appointed as his counsel. Petitioner pled guilty to Counts One

through Eleven of the Indictment at a hearing on June 12, 2001. Tr. of Change of Plea Hearing at 45. At the change of plea hearing, the Court informed petitioner that, based on a preliminary calculation, the Sentencing Guideline imprisonment range for the offenses charged in the indictment was 130 to 162 months. *Id.* at 18.

Prior to sentencing, petitioner sent a letter to his counsel asking that he file an "omnibus § 5K2.0 departure motion" to lower his sentence. (Letter from Edwards to Levin of 3/18/03, at 2.) Under § 5K2.0 of the sentencing guidelines, a judge may depart from the applicable guideline range if an offender characteristic "distinguishes the case from the 'heartland' cases covered by the guidelines." U.S.S.G. § 5K2.0. Petitioner argued in his letter to counsel that the following familial circumstances distinguished his case and warranted a downward departure: (1) petitioner had sole custody of his child; (2) his mother's "health situation;" (3) petitioner's "terminally-ill, cancer-stricken father's health situation, along with the fact that [petitioner] was his primary caregiver." (Letter from Edwards to Levin of 3/18/03, at 2.)

Defense counsel did not file a motion for downward departure under § 5K2.0 on any of the grounds addressed by petitioner in his letter. However, he addressed most of the issues raised by petitioner's letter at sentencing. Petitioner's Sentencing Memorandum mentioned his mother's health and the fact that he had custody of his son. Def.'s Sentencing Memo. at 1, 2. His stepfather's health was addressed in letters from character witnesses submitted to the

Court. Def.'s Sentencing Memo., Letter from Monica Allison, Letter from Bernice Jarvis, Letter from Martina Edwards. The Court also incorporated petitioner's statement that his father was "very ill" into the Presentence Investigation Report after petitioner requested this change at sentencing. *See* PSI Corrections/Changes Form at 2; Presentence Investigation Report ¶ 48, Sentencing Hr'g Tr. ("Sen.Tr.") at 9–11.[1] These issues were also raised by the petitioner and his witnesses at sentencing on November 18, 2002. Sen. Tr. at 19–20, 27.

The government filed a motion for a downward departure under § 5K1.1 of the sentencing guidelines based on petitioner's "substantial assistance to authorities" in the prosecution of another individual. U.S.S.G. § 5K1.1; Sen. Tr. at 16. At sentencing on April 18, 2002, the Court granted the motion and departed downward from the 130 to 163 guideline range to a sixty month concurrent sentence on all counts. Sen. Tr. at 44. At the end of the sentencing hearing, the Court advised petitioner that he had ten days to file a notice of appeal and that Mr. Levin would continue to represent him in any appeal. Sen. Tr. at 47. Petitioner failed to file a notice of appeal before the expiration of this ten day period.

On April 15, 2003, Petitioner filed a motion under 28 U.S.C. § 2255 asking the Court to vacate his sentence based on allegations of ineffective assistance of counsel. The Court conducted a two day hearing on the habeas motion beginning on November 25, 2003. At the hearing, peti-

---

1. Petitioner was apparently referring to his step-father's health in his letter to counsel requesting that he file a motion for downward departure. According to petitioner's attorney, the presentence report originally referred to his biological father and "that's where the confusion, I think, occurs." Habeas Hr'g Tr. of November 26, 2003 ("Habeas Tr. II") at 13. Petitioner has had no contact with his biological father. *Id.* Petitioner's step-father passed away in August of 2002. Habeas Hr'g Tr. of November 25, 2003 ("Habeas Tr. I") at 20–21.

tioner withdrew all ineffectiveness claims asserted in his § 2255 motion with the exception of claims asserting that his attorney was ineffective for the following reasons: 1) failure to file an appeal despite petitioner's specific request to file an appeal; and 2) failure to file a motion for downward departure under United States Sentencing Guidelines § 5K2.0. Habeas Hr'g Tr. of November 26, 2003 ("Habeas Hr'g Tr. II") at 23–24. Petitioner and Mr. Levin testified concerning both issues at the hearing.

The evidence presented at the hearing may be summarized as follows.

Petitioner had one telephone conversation with his attorney concerning the decision to take an appeal on April 26, 2002, within the ten day period for filing a notice of appeal. Petitioner and his attorney offer different versions of this conversation. According to petitioner, he "definitively" asked his attorney to file an appeal. Habeas Hr'g Tr. of November 25, 2003 ("Habeas Hr'g I") at 26. Petitioner said his attorney explained why an appeal would be unsuccessful but ended by saying, "if you want me do it, I'll do it." *Id.* at 31. In response, petitioner said, "well do it" *Id.* Petitioner claims his attorney answered this request by informing him that he was no longer his attorney. At this point, the conversation became heated and petitioner admits to hanging up the phone. *Id.*

Petitioner's attorney agrees that petitioner began the telephone conversation by stating that he wanted to appeal, and he also agrees that he responded by telling him that there were no grounds for an appeal. *Id.* at 56. However, counsel's recollection of the end of the conversation is different than that of petitioner. According to counsel, he told petitioner, "you'd better think it over and get back to me because we only have two days." *Id.* at 57. Counsel admits that he never at-

tempted to contact petitioner after this conversation, *Id.* at 66, and petitioner never called him back regarding an appeal.

## II. *DISCUSSION*

"*Strickland v. Washington,* 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), supplies the standard for addressing a claim of ineffective assistance of counsel." *United States v. Smack,* 347 F.3d 533, 537 (3d Cir.2003). This standard requires a two-part inquiry. "First, the defendant must show that counsel's performance was deficient." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

The Court conducted a hearing on the habeas motion on November 25th and 26th, 2003. Based on the Third Circuit's guidance in *Smack,* all remaining issues raised in the motion were addressed at the hearing. *United States v. Smack,* 347 F.3d 533, 536 (3d Cir.2003).

### A. FAILURE TO FILE AN APPEAL

██ If petitioner asked his attorney to file an appeal and his attorney failed to do so, counsel's performance is ineffective under *Strickland.* With regard to objectively reasonable representation, "a lawyer

who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). "Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.* at 477, 120 S.Ct. 1029. With respect to the second element of the *Strickland* standard, "[p]rejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." *Solis v. United States,* 252 F.3d 289, 293–294 (3d Cir.2001).

The court in *Valletto v. United States,* 195 F.Supp.2d 643 (D.N.J.2002), held that defense counsel has an obligation to determine his client's intentions regarding an appeal even if the client never explicitly directs his counsel to file an appeal. In *Valletto,* after the defendant requested that his attorney "put in an appeal for me" and counsel questioned the wisdom of such action, counsel "never inquired about his client's final decision regarding the filing of an appeal." *Id.* at 645–46. On that issue, the *Valletto* court stated that "where a defendant indicates his general desire for an appeal and never expressly states otherwise, an attorney does not meet his obligation to make a reasonable effort to discover his client's wishes where he neglects to take any affirmative action to determine his client's intentions prior to the expiration of the period in which a notice of appeal may be filed." *Id.* at 646.

■ In this case, counsel acknowledges that his client initially asked him to file an appeal. In response, he said he attempted to dissuade his client from appealing, told his client to think about the decision, and call him if he wanted to appeal. Habeas Tr. I at 65. Counsel never attempted to contact his client after this conversation, and petitioner did not call him. *Id.* at 66.

■ The Court finds that defense counsel was told to file a notice of appeal but hoped his client would change his mind before the expiration of the ten day period for doing so. The decision to file an appeal is the petitioner's and counsel must complete this "purely ministerial task" even if he disagrees with his client's decision. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Under the circumstances presented in this case, it was counsel's responsibility to communicate with his client before expiration of the appeal period to determine his client's wishes. In this case, defense counsel was ineffective in failing to do so.

■ At this stage, the Court "need not reach the merits" of petitioner's appeal because the petitioner is not required to establish that his "appeal would have succeeded or even would have had merit" to succeed on a claim for ineffective assistance of counsel for failure to file an appeal. *Solis v. United States,* 252 F.3d 289, 295 (3d Cir.2001) (quoting *McHale v. United States,* 175 F.3d 115, 119 (2d Cir.1999)). Because the Court finds that counsel's ineffectiveness deprived petitioner of the right to file an appeal, petitioner "must be given the opportunity nunc pro tunc to brief his direct appeal in full." Thus, the Court will grant petitioner leave to file a notice of appeal within twenty days of this Order.

## B. FAILURE TO FILE A MOTION FOR DOWNWARD DEPARTURE UNDER § 5K2.0 OF THE SENTENCING GUIDELINES

Petitioner also claims his attorney was ineffective because he failed to file a downward departure motion based on extraordinary family circumstances under United

States Sentencing Guidelines § 5K2.0. In addressing this argument, the court will consider whether the failure to file the motion fell below an objective standard of reasonableness and prejudiced petitioner.

"[A]lthough the ordinary impact of a sentence on family members will not support a downward departure, where the impact is unusual or extraordinary, the District Court has discretion" to grant a downward departure. *United States v. Dominguez*, 296 F.3d 192, 195 (3d Cir. 2002). There is no requirement that the circumstances be "extra-extraordinary." *Id.* But, "a downward departure based on family ties and responsibilities should be the exception rather than the rule." *United States v. Sweeting*, 213 F.3d 95, 100 (2000). In addressing this issue, the Court recognizes that the granting of such a motion is within its discretion. *Dominguez*, 296 F.3d at 195.

In *United States v. Sweeting*, 213 F.3d 95 (2000), the Third Circuit held that a District Court abused its discretion when it granted a downward departure based on extraordinary family circumstances to a single mother and sole provider for five children, whose eldest son suffered from Tourette's Syndrome. *Id.* at 96–97. The court found that "none of the factors the district court considered, taken individually or in their entirety, present extraordinary family ties and responsibilities taking this case out of the heartland of cases sentenced under the guidelines." *Id.* at 101–102. As to the defendant's status as a single parent, the Third Circuit stated that "the circumstance that Sweeting's incarceration will disrupt the family unit cannot be considered atypical, inasmuch as innumerable defendants no doubt could establish that their absence will cause a void in their children's lives." *Id.* at 102. With regard to her son's illness, the court relied in part on *United States v. Archuleta*, 128 F.3d 1446, 1450–51 (10th Cir.1997), in concluding that the need to care for a disabled family member was not an extraordinary situation. *Id.* at 105. In *Archuleta*, the Tenth Circuit determined that a defendant's status as a single parent and caretaker for his elderly, diabetic mother did not warrant a departure. In both *Sweeting* and *Archuleta*, the circuit courts directed the district courts to consider whether another "competent adult" could provide similar care for the sick family member when considering such a departure. *Sweeting*, 213 F.3d at 107, *Archuleta*, 128 F.3d at 1450–51.

■ The Court finds that petitioner's family responsibilities in this case are not as unusual as those faced by the defendant in *Sweeting*. Thus, counsel's decision not to file a § 5K2.0 motion for a downward departure was not unreasonable. Although petitioner had legal custody of his son at the time of his arrest, his son continued to live with his grandmother after petitioner moved to a different address following his marriage on May 27, 2000. Habeas Hr'g Tr. I at 23, 33. Petitioner's mother was diabetic, but she was able to "get around" and she attended both the sentencing and habeas hearings. *Id.* at 24–25. Before petitioner's arrest and his step-father's death, petitioner visited his mother's house three to four times a week and provided "physical therapy" for his step-father. *Id.* at 18–20. According to petitioner, this involved making his step-father "get up and walk around" and bathing his father. *Id.*

Petitioner's family activities do not distinguish his case from the ordinary. Moreover, what he did for his family could have been performed by another competent adult in his absence. In fact, petitioner admits that others, including his son, were able to care for his step-father while he was in jail. *Id.* at 22–23. Thus, the

Court concludes that counsel's decision not to file a motion for downward departure did not fall below an objective standard of reasonableness.

■ To prevail on his motion, petitioner is also required to establish prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In view of that burden, the Court must analyze the evidence presented and proffered. Based on the foregoing analysis of *Sweeting* and a comparison of the evidence presented in that case with the evidence proffered and presented in this case, the Court concludes that if a motion for downward departure for extraordinary family circumstances had been filed it would not have been granted. Thus, counsel's decision not to file a downward departure motion under § 5K2.0 was not prejudicial.

## III. *CONCLUSION*

For the foregoing reasons, the Court grants the Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 in part—petitioner has twenty (20) days to file a direct appeal of his sentence—and denies the Motion with prejudice in all other respects.

### *ORDER*

**AND NOW,** this 31st day of December 2003, upon consideration of petitioner Kelvin Edwards's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Document No. 50, filed April 15, 2003), Government's Response to Defendant's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence (Document No. 52, filed May 2, 2003), following a hearing on November 25th and 26th, 2003, **IT IS ORDERED** that petitioner Kelvin Edwards's *pro se* Motion to Vacate,

Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 is **GRANTED IN PART AND DENIED IN PART.**

1. That part of the Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 that is based on ineffective assistance of counsel for failure to file an appeal is **GRANTED.** Petitioner is granted leave to file and serve a notice of appeal within twenty (20) days of the date of this order. One copy of the notice of appeal shall be served on the Court (Chambers, Room 12613) when the original is filed.

2. The Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 is **DENIED WITH PREJUDICE** in all other respects.